Nicole Hancock, ISB No. 6899
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000
Facsimile:  208.389.9040
nicole.hancock@stoel.com

Hannah Brass Greer, ISB No. 8232
PLANNED PARENTHOOD OF THE GREAT
NORTHWEST AND THE HAWAIIAN ISLANDS
2001 East Madison Street
Seattle, WA 98122
Telephone: 206.427.3208
Hannah.BrassGreer@ppgnhi.org

Alice Clapman, *Pro Hac Vice*
PLANNED PARENTHOOD FEDERATION OF
AMERICA
1110 Vermont Avenue NW
Washington, DC 20005
Telephone: 202.973.4862
alice.clapman@ppfa.org

Kim C. Clark, *Pro Hac Vice*
LEGAL VOICE
907 Pine Street, Suite 500
Seattle, WA 98101
Telephone: 206.682.9552
Facsimile: 206.682.9556
kclark@legalvoice.org

Vanessa Soriano Power, *Pro Hac Vice*
vanessa.power@stoel.com
Jill D. Bowman, *Pro Hac Vice*
jill.bowman@stoel.com
S. Julia Collier, *Pro Hac Vice*
julia.collier@stoel.com
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 206.624.0900
Facsimile: 206.386.7500

*Attorneys for Plaintiffs*

RESPONSE TO MOTION TO DISMISS (Dkt. 33)

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PLANNED PARENTHOOD OF THE GREAT NORTHWEST AND THE HAWAIIAN ISLANDS, a Washington corporation; MARY STARK, on behalf of herself and her patients,<br><br>        Plaintiffs,<br><br>    v.<br><br>LAWRENCE G. WASDEN, in his official capacity as Attorney General of Idaho; JAN M. BENNETTS, in her official capacity as Ada County Prosecuting Attorney; GRANT P. LOEBS, in his official capacity as Twin Falls County Prosecuting Attorney; THE INDIVIDUAL MEMBERS OF THE STATE BOARD OF MEDICINE, in their official capacity; THE INDIVIDUAL MEMBERS OF THE STATE BOARD OF NURSING, in their official capacity,<br><br>        Defendants. | Case No. 1:18-cv-00555-REB<br><br>RESPONSE TO DEFENDANTS' MOTION TO DISMISS (Dkt. 33) |

RESPONSE TO MOTION TO DISMISS (Dkt. 33)

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................. 3

III.    ARGUMENT ....................................................................................................... 6

      A.      Standard of Review ................................................................................. 6

      B.      Plaintiffs' Substantive Due Process Claim Is Factually Sufficient and
                Legally Plausible ..................................................................................... 7

             1.      Plaintiffs' Challenge to Idaho's APC Ban Fits Squarely Within
                      Supreme Court Precedent. ......................................................... 7

             2.      *Mazurek* Is Distinguishable from Plaintiffs' Challenge ........................ 9

             3.      Undue Burden Analysis Is Required Because the APC Ban Is an
                      Affirmative State Restriction, Not the Failure of the State to Grant
                      a Benefit. ................................................................................... 12

      C.      Plaintiffs' Equal Protection Claim Is Factually Sufficient and Legally
                Plausible. ............................................................................................... 16

             1.      The APC Ban Violates the Equal Protection Rights of Plaintiffs
                      and Their Patients. .................................................................... 16

                  a)      The APC Ban Violates the Equal Protection Rights of
                            Patients. ........................................................................ 17

                  b)      The APC Ban Violates the Equal Protection Rights of
                            APCs. ........................................................................... 20

                  c)      "Abortion Is Unique" Is Not a Sufficient Justification for
                            Singling Out Abortion for Greater Restriction Than Other
                            Medical Procedures That Carry the Same or Greater Risk ........... 24

      D.      Plaintiffs Complied with the Notice Pleading Requirements of Federal
                Rule of Civil Procedure 8(a)(2). ........................................................... 24

IV.     CONCLUSION .................................................................................................. 27

# TABLE OF AUTHORITIES

## Cases

*Ariz. Dream Act Coal. v. Brewer*,
    855 F.3d 957 (9th Cir. 2017) ................................................21

*Bain v. Cal. Teachers Ass'n*,
    891 F.3d 1206 (9th Cir. 2018) ................................................6

*Beck v. United Food & Commercial Workers Union, Local 99*,
    506 F.3d 874 (9th Cir. 2007) ................................................23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)), *aff'd*, 447 F. App'x 776 (9th Cir. 2011)..........................6, 19

*City of Akron v. Akron Center for Reproductive Health*,
    462 U.S. 416 (1983)................................................12

*City of Cleburne v. Cleburne Living Ctr., Inc.*,
    473 U.S. 432 (1985)................................................16, 21

*Comm. to Defend Reprod. Rights v. Myers*,
    625 P.2d 779 (Cal. 1981) ................................................18

*Connecticut v. Menillo*,
    423 U.S. 9 (1975) (per curiam)................................................12

*Cortes v. County of Santa Clara*,
    630 F. App'x 731 (9th Cir. 2016) ................................................23

*Craig v. Boren*,
    429 U.S. 190 (1976)................................................17

*Erickson v. Bartell Drug Co.*,
    141 F. Supp. 2d 1266 (W.D. Wash. 2001)................................................18

*Frontiero v. Richardson*,
    411 U.S. 677 (1973)................................................17, 19

*Geduldig v. Aiello*,
    417 U.S. 484 (1974)................................................17, 18

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997) ................................................6

*Gonzales v. Carhart*,
    550 U.S. 124 (2007)................................................18

*Harris v. McRae*,
448 U.S. 297 (1980)...........................................................................13, 20, 24

*Hawn v. Exec. Jet Mgmt., Inc.*,
615 F.3d 1151 (9th Cir. 2010) .........................................................................21

*Hodgson v. Minnesota*,
497 U.S. 417 (1990)..................................................................................19, 20

*Idaho Rivers United v. U.S. Forest Serv.*,
857 F. Supp. 2d 1020 (D. Idaho 2012) ..............................................................7

*J.E.B. v. Alabama ex rel. T.B.*,
511 U.S. 127 (1994)..........................................................................................19

*Karlin v. Foust*,
188 F.3d 446 (7th Cir. 1999) .............................................................................9

*Maher v. Roe*,
432 U.S. 464 (1977)....................................................................................13, 20

*Mazurek v. Armstrong*,
520 U.S. 968 (1997)............................................................................... passim

*Merritt v. Countrywide Fin. Corp.*,
759 F.3d 1023 (9th Cir. 2014) ........................................................................25

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .............................................................................1

*Nampa Classical Acad. v. Goesling*,
714 F. Supp. 2d 1079 (D. Idaho 2010) ..............................................................6

*Nat'l Ass'n of African Am.-Owned Media v. Charter Commc'ns, Inc.*,
915 F.3d 617 (9th Cir. 2019) .............................................................................6

*Nev. Dep't of Human Res. v. Hibbs*,
538 U.S. 721 (2003)..........................................................................................18

*Pers. Adm'r of Mass. v. Feeney*,
442 U.S. 256 (1979)..........................................................................................18

*Planned Parenthood Ariz., Inc. v. Humble*,
753 F.3d 905 (9th Cir. 2014) ................................................................. passim

*Planned Parenthood of Greater Ohio v. Hodges*,
188 F. Supp. 3d 684 (S.D. Ohio 2016) ............................................................24

*Planned Parenthood of Ind. & Ky., Inc. v. Comm'r, Ind. Dep't of Health*,
   64 F. Supp. 3d 1235 (S.D. Ind. 2014) ..................................................................24

*Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*,
   896 F.3d 809 (7th Cir. 2018) ...............................................................................15

*Planned Parenthood Se., Inc. v. Strange*,
   9 F. Supp. 3d. 1272 (M.D. Ala. 2014) ......................................................14, 15, 16

*Planned Parenthood of Se. Pa. v. Casey*,
   505 U.S. 833 (1992)....................................................................................... passim

*Plyler v. Doe*,
   457 U.S. 202 (1982)...............................................................................................16

*PPGNHI v. Wasden*,
   Case No. 1:15-cv-00557-BLW ...............................................................................12

*Roe v. Wade*,
   410 U.S. 113 (1973)...............................................................................................12

*Rothery v. County of Sacramento*,
   700 F. App'x 782 (9th Cir. 2017) ..........................................................................20

*Shapiro v. Thompson*,
   394 U.S. 618 (1969), *overruled in part on other grounds by Edelman v.
   Jordan*, 415 U.S. 651 (1974) ................................................................................17

*Silveira v. Lockyer*,
   312 F.3d 1052 (9th Cir. 2002), *abrogated on other grounds by District of
   Columbia v. Heller*, 554 U.S. 570 (2008) .............................................................20

*Skinner v. State of Okla. ex rel. Williamson*,
   316 U.S. 535 (1942)...............................................................................................17

*Stanton v. Stanton*,
   421 U.S. 7 (1975)...................................................................................................18

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ...............................................................................25

*Sulla v. Bd. of Registered Nursing*,
   140 Cal. Rptr. 3d 514 (Ct. App. 2012) ..................................................................22

*Tucson Woman's Clinic v. Eden*,
   379 F.3d 531 (9th Cir. 2004) ......................................................................9, 18, 19

*W. Ala. Women's Ctr. v. Miller,*
    217 F. Supp. 3d 1313 (M.D. Ala. 2016) ...................................................................14

*Whole Woman's Health v. Hellerstedt,*
    136 S. Ct. 2292 (2016) ........................................................................... passim

*Whole Woman's Health v. Lakey,*
    46 F. Supp. 3d 673 (W.D. Tex. 2014)......................................................................8

**Statutes**

California Fair Employment and Housing Act of 1959, Government Code
    §§12900-12996 ...................................................................................................23

Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq (1964)....................................23

Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.............................................18

Idaho Code §18-605(3) ....................................................................................................1

Idaho Code § 18-608A..................................................................................................1, 26

Idaho Code § 54-1402 ......................................................................................................3

Idaho Code § 54-1807A ...................................................................................................3

**Rules**

Fed. R. Civ. P. 8(a) .......................................................................................................25

Fed. R. Civ.  P. 8(a)(2) ..........................................................................................6, 24, 25

**Regulations**

 Idaho Admin. Code r. 22.01.03.010...............................................................................3

Idaho Admin. Code r. 22.01.03.028...............................................................................3

Idaho Admin. Code r. 22.01.03.030...............................................................................3

Idaho Admin. Code r. 22.01.03.042...............................................................................3

Idaho Admin. Code r. 23.01.01.271...............................................................................3

Idaho Admin. Code r. 23.01.01.280...............................................................................3

Idaho Admin. Code r. 23.01.01.315...............................................................................3

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - v

**Constitutional Provisions**

U.S. Const. amend. XIV, § 1 ................................................................................. passim

U.S. Const. amend. XIV, § 5 ....................................................................................18

**Other Authorities**

Alyssa Llamas et al., Jacob's Institute of Women's Health, George Washington
     University, *Public Health Impacts of State-Level Abortion Restrictions:
     Overview of Research & Policy in the United States* 20-27 (Apr. 2018),
     https://publichealth.gwu.edu/sites/default/files/downloads/projects/JIWH/Imp
     acts_of_State_Abortion_Restrictions.pdf ................................................................5

American Association of Nurse Practitioners, *State Practice Environment*,
     https://www.aanp.org/legislation-regulation/state-legislation/state-practice-
     environment ...............................................................................................................3

5 Charles A. Wright et al., *Federal Practice and Procedure* § 1215, Westlaw
     (database updated Apr. 2019) .................................................................................25

Donna Barry & Julia Rugg, Center for American Progress, *Improving Abortion
     Access by Expanding Those Who Provide Care* (Mar. 26, 2015),
     https://www.americanprogress.org/issues/women/reports/2015/03/26/109745/i
     mproving-abortion-access-by-expanding-those-who-provide-care/.........................4

Rachel K. Jones & Jenna Jerman, *Abortion Incidence and Service Availability in
     the United States, 2014*, 49 Perspectives on Sexual & Reproductive Health 17
     (2017) (table 4) ......................................................................................................4

## I.      INTRODUCTION

Idaho's laws banning advanced practice clinicians ("APCs") from performing abortion care—enacted nearly 20 years ago, long before the advent of safe medication abortion and the standardization of the APC professions—offer patients no medical benefit and in fact *increase* medical risk for patients by impeding their access to critical, constitutionally protected health care.  These laws[1] (collectively the "APC Ban") are unconstitutional under both substantive due process and equal protection analyses.  Defendants' motion to dismiss should be denied because Plaintiffs Planned Parenthood of the Great Northwest and the Hawaiian Islands ("PPGNHI") and Mary Stark (collectively, "Plaintiffs") have alleged sufficient factual allegations, with reasonable inferences drawn from those facts taken as true, to reflect Plaintiffs' more than plausible legal bases for relief.  *See Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009).

*First*, Defendants rely on a 1997 decision, *Mazurek v. Armstrong,* 520 U.S. 968, 975 (1997), upholding a Montana APC ban, while studiously ignoring the Court's landmark 2016 decision in *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2315 (2016) ("*WWH*"), striking down two restrictions that were likewise medically unnecessary and clarifying the proper legal standard for judicial review of abortion restrictions.[2]  *WWH* reaffirmed that abortion is a constitutionally protected liberty interest, and therefore *any* abortion restriction must be evaluated based on *specific* evidence of its benefits and harms—and if its harms outweigh its benefits, it is invalid.  136 S. Ct. at 2309-10; *see also Planned Parenthood Ariz., Inc. v. Humble*, 753 F.3d 905, 914 (9th Cir. 2014) ("[T]he undue burden test is context-specific, and . . . both the severity of a burden and the strength of the state's justification can vary depending on the

---

[1] Idaho Code §§ 18-608A and 18-605(3), referenced collectively in the Complaint as the Physician-Only Law.

[2] It is striking that Defendants do not acknowledge *WWH* until the last two pages of their brief, and then only to cite it for the secondary argument that Plaintiffs must prove causation.

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - 1

circumstances."). While Defendants assert that *Mazurek* created a "bright line rule" foreclosing challenges to APC bans once and for all, that argument is untenable under *WWH*.

Nor, even when it was issued, did *Mazurek* stand for a "bright line" rule that all APC bans are valid. The *Mazurek* Court faced "uncontested" evidence that the Montana law did *not* impede access to abortion and merely considered whether plaintiffs had demonstrated that it had been enacted with an improper "*purpose*." 520 U.S. at 972. The Court was careful not to say that such laws would be constitutional whatever their effect on access. And since *Mazurek*, the Court has further clarified that, when a restriction limits access to abortion, *states* must produce evidence *justifying* that burden. *See WWH*, 136 S. Ct. at 2309-10; *id.* at 2324-25 (Thomas, J., dissenting) (unsuccessfully arguing that *Mazurek* foreclosed relief against other restrictions with asserted safety benefits). Here, the Complaint sets forth ample facts supporting their claim that Idaho's APC Ban limits abortion access and fails to provide any offsetting benefits.

*Second*, this case is not, as Defendants dismissively suggest, a lawsuit about convenience. It is about a ban that seriously impedes women from exercising their fundamental constitutional right to determine whether and when to assume the physical burdens and risks of pregnancy and childbirth and the life-changing responsibilities of parenthood. In trivializing the significant limits this ban imposes on when and where Plaintiffs can offer early abortion care, Defendants ask the Court to ignore the effect of these limits on women who are traveling far distances, parenting, living in poverty, suffering intimate partner violence, and/or working low-wage jobs with inflexible schedules—contrary to binding precedent, *see*, *e.g.,* *WWH*, 136 S. Ct. at 2302 (finding that restrictions would particularly harm "poor, rural, or disadvantaged women" (internal quotation marks and citation omitted)); *Humble,* 753 F.3d at 915 (the undue burden

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - 2

analysis considers "the ways in which an abortion regulation interacts with women's lived experience [and] socioeconomic factors").

Plaintiffs should have the opportunity to develop this record, and to show how the APC Ban unduly burdens women seeking an abortion—delaying them and imposing on them medical risk, financial strain, and other harms. The motion to dismiss should be denied.

## II.   FACTUAL BACKGROUND[3]

Early abortion methods are extremely straightforward and low-risk.  Complaint ("Compl.") ¶ 21.  One method is medication abortion, in which the patient takes two medications orally which cause contractions that empty her uterus.  *Id*. ¶ 22.  Another is aspiration abortion, in which a small tube is inserted through the natural opening of the patient's cervix and gentle suction is used to empty her uterus.  *Id*.  ¶ 23.  Neither procedure involves any surgical incision. *Id*.

APCs are licensed health care providers with advanced education and training.  Compl. ¶ 2.  Idaho law gives broad authority to APCs[4] to perform many of the same tasks as licensed physicians, including evaluating and diagnosing patients, ordering and interpreting diagnostic tests, and initiating and managing treatments, including prescribing medication.[5]  *Id*. ¶ 1.  In Idaho, APCs are authorized to perform a variety of medical procedures that reflect their advanced training, ranging from delivering babies and inserting intrauterine contraceptive

---

[3] The factual background is drawn from the factual allegations in the Complaint, which are accepted as true for purposes of a motion to dismiss.

[4] APCs include physician assistants and advanced practice registered nurses (a category of professional caregivers that includes certified nurse practitioners and certified nurse midwives).  Compl. ¶ 1.

[5] Idaho Code §§ 54-1402, 54-1807A; Idaho Admin. Code r. 22.01.03.010, 22.01.03.028, 22.01.03.030, 22.01.03.042, 23.01.01.271, 23.01.01.280, 23.01.01.315; *see* American Association of Nurse Practitioners, *State Practice Environment*, https://www.aanp.org/legislation-regulation/state-legislation/state-practice-environment (last visited Nov. 15, 2018).

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - 3

devices (IUDs), to performing endometrial biopsies (the removal of tissue from the uterine lining).  *Id.* ¶ 2.  The complexity of health care services that APCs are already authorized to provide is equal to or greater than the complexity of early abortion care.  *Id.* ¶¶ 3, 51-57. Despite the fact that Idaho authorizes APCs to perform comparable - and in the case of miscarriage management, identical - health care services, the APC Ban restricts APCs from providing medication and aspiration abortion care.  *Id.* ¶ 3.

The APC Ban is not medically necessary.  Comp. ¶¶ 17-23 (early abortion practice and safety); ¶¶ 28-29 (licensing requirements for APCs in Idaho); ¶¶ 30-44 (scope of APC practice in Idaho); ¶¶ 46-56 (studies and medical organizations' recognition of the ability of APCs to safely provide abortion services); ¶¶ 57-71 (APC training, including training and experience of Plaintiff Mary Stark).  Numerous states, including California, Oregon, Vermont, Montana, and New Hampshire, legally permit APCs to provide abortion care, including aspiration and medication abortions.  *Id.* ¶ 27.[6]  APCs can safely and effectively provide the same in Idaho.  *Id.* ¶¶ 46-71. And there are APCs in Idaho who are willing and able to provide abortion care.  *Id.* ¶¶ 57-71.

The APC Ban significantly limits access to abortion care in Idaho.  There are only five locations in the entire state where a woman can access abortion care, and only three of them are clinics (as opposed to doctors in private practice who may not accept all patients).  Compl. ¶ 72.[7] Almost 70 percent of women in Idaho live in counties without abortion clinics.  *Id.*  As a result,

---

[6] Citing Donna Barry & Julia Rugg, Center for American Progress, *Improving Abortion Access by Expanding Those Who Provide Care* (Mar. 26, 2015), https://www.americanprogress.org/issues/women/reports/2015/03/26/109745/improving-abortion-access-by-expanding-those-who-provide-care/.  Further, the Attorney General for the State of Washington recently issued an opinion that a court would likely hold that Washington law "allows advanced registered nurse practitioners to perform pre-viability aspiration abortions, so long as that procedure is otherwise within an ARNP's training, certification, and scope of practice."  *See* Req. for Judicial Notice, Ex. C.

[7] (citing Rachel K. Jones & Jenna Jerman, *Abortion Incidence and Service Availability in the United States, 2014*, 49 Perspectives on Sexual & Reproductive Health 17 (2017) (table 4))

women often need to travel long distances for abortion services.  *Id.*; Compl. ¶¶ 4, 72.  Women traveling for abortion care often face additional hurdles, including arranging and paying for transportation, taking time off work (and thus losing pay), and arranging for child care.  Compl. ¶¶ 73-74.  These costs and hurdles can be prohibitive, particularly for populations living in poverty.  *Id.* ¶¶ 73-75.  As a result of lengthy travel distances, some women are simply unable to obtain an abortion and are instead forced to carry a pregnancy to term against their will.  *Id.* ¶ 78.[8]

The APC Ban also has restricted availability of abortion care because abortion care is limited by the availability of physicians; as a result, there are no publicly accessible clinics in Idaho regularly offering evening or weekend appointments for abortion care.  Compl. ¶¶ 79-81.  This limited availability has serious consequences.  *Id.* ¶¶ 79-93.  For example, delay can mean the difference between obtaining a medication abortion and an aspiration abortion, with meaningful repercussions for women's health and well-being.  *Id.* ¶¶ 90-92 (explaining it is not uncommon that a patient estimated to be at 9 weeks of pregnancy or more contacts PPGNHI seeking a medical abortion but due to geographic distance and limitations on availability, is pushed past the limit for medication abortion and forced to travel a large distance, forgo medication abortion and obtain an aspiration abortion, or forgo abortion care altogether).

If the APC Ban were invalidated, Idaho women would have significantly more access to abortion care.  Abortion care would be available in Idaho six days of the week, and for extended hours including evenings and weekends.  Compl. ¶ 94.  This would make it easier for women to fit an appointment in between their work and childcare obligations, with less delay.  Access

---

[8] Citing Alyssa Llamas et al., Jacob's Institute of Women's Health, George Washington University, *Public Health Impacts of State-Level Abortion Restrictions: Overview of Research & Policy in the United States* 20-27 (Apr. 2018), https://publichealth.gwu.edu/sites/default/files/downloads/projects/JIWH/Impacts_of_State_Abortion_Restrictions.pdf.

would be further expanded because more Idaho women would be able to obtain abortion care from the same APC in their community from whom they receive other primary, gynecological, and/or prenatal care.  *Id.* ¶ 95.  Allowing APCs to perform abortion care in Idaho would reduce delays and address geographic and logistical challenges, reducing medical, emotional, and financial harms.  *Id.* ¶ 96.

## III.  ARGUMENT

### A.    Standard of Review

The Ninth Circuit has consistently recognized that there is "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (internal quotation marks and citation omitted).  Dismissal is inappropriate unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, construing the complaint in the light most favorable to the plaintiff." *Bain v. Cal. Teachers Ass'n*, 891 F.3d 1206, 1211 (9th Cir. 2018) (internal quotation marks and citation omitted).  "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Nampa Classical Acad. v. Goesling*, 714 F. Supp. 2d 1079, 1088 (D. Idaho 2010) (ellipsis omitted) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007)), *aff'd*, 447 F. App'x 776 (9th Cir. 2011).  At this stage, the Court is "not permitted to weigh evidence and determine whether the explanations proffered by [the parties] are ultimately more persuasive," but rather must deny the motion to dismiss except when the "plaintiff's explanation is implausible." *Nat'l Ass'n of African Am.-Owned Media v. Charter Commc'ns, Inc.*, 915 F.3d 617, 627 (9th Cir. 2019) (internal quotation marks, emphasis, and citation omitted).  "The issue is not whether the plaintiff will prevail but whether he is entitled to offer evidence to support the

claims." *Idaho Rivers United v. U.S. Forest Serv.*, 857 F. Supp. 2d 1020, 1024 (D. Idaho 2012) (internal quotation marks and citation omitted).

> **B.      Plaintiffs' Substantive Due Process Claim Is Factually Sufficient and Legally Plausible.**

Plaintiffs allege that by banning APCs from providing abortion care even though they can provide this care as safely and effectively as physicians, Defendants are violating the due process rights of patients seeking an abortion.  This claim is based closely on the Court's holdings in *WWH* that: (1) abortion is a constitutionally protected liberty interest; and (2) state restrictions on abortion impose an "undue burden," and therefore are unconstitutional, if they impose on patients burdens that outweigh their benefits.  *WWH,* 136 S. Ct. at 2298, 2309-10.  Plaintiffs have pled specific facts supporting the inferences: (1) that Idaho's APC Ban provides no benefit to patients; and (2) that the law burdens patients by restricting their access to care.  Thus, Plaintiffs have pled this claim sufficiently under *WWH*.

> **1.      Plaintiffs' Challenge to Idaho's APC Ban Fits Squarely Within Supreme Court Precedent.**

Defendants contend that Plaintiffs' substantive due process claim is barred by precedent upholding restrictions similar to Idaho's APC Ban.  *See* Motion (Dkt. 33) at 9-19.  Defendants' argument, however, asks this Court to wholly ignore central precedent (*WWH*, 136 S. Ct. 2292) and to misapply the holding of *Mazurek*, 520 U.S. 968.  Defendants' flawed analysis does not offer a basis for dismissal of Plaintiffs' substantive due process challenge to the APC Ban.

Abortion restrictions are unconstitutional when they impose an "'undue burden'" on abortion access.  *WWH*, 136 S. Ct. at 2309-10 (quoting *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 878 (1992)).  As the Court made clear in *WWH*, when a law fails to confer "benefits sufficient to justify the burdens," those burdens are "undue," and thus unconstitutional. *Id*. at 2300.  The undue burden standard requires meaningful review of abortion restrictions—a

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - 7

court must not simply defer to the state's assertions about benefits and burdens, because such deference is inconsistent with the status of the abortion right as a "constitutionally protected personal liberty" and with the court's "independent constitutional duty" to closely review the state's assertions. *Id*. at 2309-10.  Instead, a court should "place[] considerable weight upon evidence and argument presented in judicial proceedings," and, for the law to be upheld, the record must show that the law actually furthers the state's asserted interest. *Id*. at 2310; *see also Humble*, 753 F.3d at 914 (explaining that the undue burden standard "requires us to weigh the extent of the burden against the strength of the state's justification in the context of each individual statute or regulation").

Applying this analysis, the Supreme Court in *WWH* invalidated two state restrictions that, like the APC Ban at issue here, were enacted ostensibly as "health and safety" regulations.  The Court did so based on findings that, *inter alia*, abortion is already extremely safe, "'with particularly low rates of serious complications,'" *WWH*, 136 S. Ct. at 2311 (quoting *Whole Woman's Health v. Lakey*, 46 F. Supp. 3d 673, 684 (W.D. Tex. 2014)); that the challenged restrictions were inconsistent with how the state regulated comparable and higher-risk medical procedures, *id*. at 2302; and that by restricting the provider network available to abortion patients, the restrictions unduly burdened their fundamental due process right to end a pregnancy.  *Id*. at 2313, 2316-18.

The Complaint clearly pleads a colorable due process claim under this precedent. Specifically, Idaho APCs are highly skilled medical professionals who routinely provide care similar in nature to, or more complex than, abortion.  *See* Compl. ¶¶ 57-71.  APCs provide early abortion care in other states, and the evidence shows that they do so just as safely as physicians. *Id. ¶¶* 46-48.  Recognizing this, major medical authorities support APC provision of early

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - 8

abortion care.  *Id.* ¶¶ 49-56.  And because Idaho's APC Ban prevents Ms. Stark and other APCs at PPNGHI from providing care, patients regularly face scheduling delays that push them later into their pregnancy, when medical risks and costs and other burdens increase – all without any medical benefit or justification.  *Id.* ¶¶ 79-93.  These facts are more than sufficient to meet Plaintiffs' burden at this preliminary stage.

### 2.    *Mazurek* **Is Distinguishable from Plaintiffs' Challenge.**

Defendants argue that APC bans stand apart from this well-established line of precedent because one such law was upheld in *Mazurek*.  *See* Motion (Dkt. 33) at 12-19.  But court after court has explained that *all* abortion restrictions must be evaluated under the undue burden framework, which requires a highly fact- and context-specific analysis whose outcome may vary based on the specific record presented.  *See Humble*, 753 F.3d at 914 ("[T]he undue burden test is context-specific, and . . . both the severity of a burden and the strength of the state's justification can vary depending on the circumstances."); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 541 (9th Cir. 2004) ("*Casey* made clear that the 'substantial obstacle' standard for determining when a law poses an undue burden on the right to obtain an abortion is record-dependent."); *see also Karlin v. Foust*, 188 F.3d 446, 485 (7th Cir. 1999) ("*Casey* does not foreclose plaintiffs from bringing facial challenges to abortion regulations in other states that are similar to those found constitutional in *Casey*.").

Not only do Defendants ignore decades of precedent establishing the record-specific nature of the undue burden standard, but they misrepresent the claims and factual record in *Mazurek* in arguing that these are "directly analogous" to *Mazurek*.  *See* Motion (Dkt. 33) at 13.

Critically, Defendants are wrong that *Mazurek* involved "claims" or "legal theories" similar to the ones pled here.  While Defendants discuss the claims and theories presented at the trial level, these are irrelevant; the only claim before the Supreme Court was the claim that

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - 9

Montana's APC ban stemmed from an improper purpose.  *Mazurek*, 520 U.S. at 972; *see generally Casey*, 505 U.S. at 877 (abortion restrictions are invalid if they have the purpose *or* effect of placing a substantial obstacle before women seeking an abortion).  The Supreme Court expressed concern that the Ninth Circuit had found that the *purpose* of Montana's statute *may* have been to create a substantial obstacle, but that the Ninth Circuit seemingly had not relied on any evidence that suggested an unlawful motive.  *Mazurek*, 520 U.S. at 972, 976.  It was uncontested in *Mazurek* that "there was insufficient evidence of a 'substantial obstacle' to abortion" such that the courts did not undertake a detailed analysis of the effect the statute had on abortion access.  *Id.* at 972.

Here, by contrast, Plaintiffs' substantive due process claim does not challenge the legislative purpose behind Idaho's APC Ban.  Instead, the Complaint meticulously details the specific and significant impediments that the statute currently imposes on access to abortion care within Idaho.  *See* Compl. ¶¶ 72-93.  The detail contained in Plaintiffs' allegations is more than sufficient to state a plausible claim that the challenged statute has the effect of restricting access to abortion services, an argument not contemplated by the Supreme Court in *Mazurek*.

Further distinguishing *Mazurek* from the circumstances presently before this Court is the fact that, at the time of the Supreme Court's decision, Ms. Cahill was the only non-physician qualified to perform abortions in Montana and was only licensed to provide procedures with a physician present.  *Mazurek*, 520 U.S. at 970-71.  The Court highlighted these facts in its decision to uphold Montana's statute, stating that Ms. Cahill "could only perform abortions with a licensed physician (who also performs abortions) present, . . . meaning that no woman seeking an abortion would be required by the new law to travel to a different facility than was previously available."  *Id.* at 973-74.  Again, the facts here are different.  In this case, there are multiple

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - 10

APCs qualified to perform abortions without a physician being present. *See* Compl. ¶¶ 11, 57-71. Indeed, APRNs are licensed professionals who practice independently, and like physicians, exercise primary responsibility for the care of their patients. *See Compl.* ¶ 30. Removing the medically unnecessary APC ban, would lessen substantially the burden on access to abortion care in Idaho, both in terms of travel time and distance, and the time it takes to get an appointment. *Id.* ¶¶ 94-96.

The facts here also differ critically from those in *Mazurek* because, since 1997, the United States Food and Drug Administration ("FDA") approved safe and legal *medication* abortion—specifically allowing it to be provided by APCs. *Id.* ¶¶ 59-71. This development materially alters the record on both sides of the undue burden scale, crystalizing that APC bans such as Idaho's are medically unjustified and that they harm women. On the question of whether the APC Ban is medically justified, the medical consensus (including at the FDA) is overwhelming that APCs are qualified to prescribe this extremely low-risk medication, and in fact APCs in Idaho lawfully prescribe these medications for other medical purposes. *Id.* ¶ 62. On the question of whether the APC Ban imposes burdens on patients seeking an abortion, one of the burdens Plaintiffs will show (post-dating *Mazurek*) is that this law restricts access to medication abortion specifically, because this treatment is only available in the earliest weeks of pregnancy and scheduling delays regularly push patients past the cut-off for this treatment. *Id.* ¶¶ 79-91. In practical terms, this means that the APC Ban deprives many women of the opportunity to avoid a medical procedure, including women who have a strong preference for doing so and even women who have medical conditions that make medication abortion the safer option. *Id.* ¶ 88; *see also Humble*, 753 F.3d at 915-16 (loss of medication abortion option a significant burden).

Thus, the mere fact that Plaintiffs are challenging a similar type of restriction as the

Montana statute at the center of *Mazurek* does not, without consideration of the specific facts,

warrant dismissal of Plaintiffs' Complaint.  Rather, a fact-intensive analysis of the present

circumstances is required and Defendants' reliance on *Mazurek* in an effort to evade

constitutional review is unavailing.[9]

### 3.    Undue Burden Analysis Is Required Because the APC Ban Is an Affirmative State Restriction, Not the Failure of the State to Grant a Benefit.

Defendants argue that the undue burden analysis does not apply here because the APC

Ban does not amount to "state action" (Motion (Dkt. 33) at 23) and the state has no affirmative

duty to facilitate the exercise of the right to abortion.  This argument defies the facts and the law,

not to mention simple logic.  It is also fundamentally inconsistent with Defendants' recent

concessions in *PPGNHI v. Wasden*, Case No. 1:15-cv-00557-BLW, that an Idaho statute banning

the provision of medication abortion by telemedicine was an unconstitutional *restriction* on

abortion access.  *See* Plaintiffs' Request for Judicial Notice, Exs. A, B (joint motion filed with

proposed order declaring that ban on the use of telemedicine to provide medication abortion

"impose[] an undue burden on women's access to abortion and therefore violate[d] the

Fourteenth Amendment").  Indeed, the APC Ban is *on all fours* with the telemedicine ban whose

---

[9] Defendants also cite to language from *Roe v. Wade*, 410 U.S. 113, 165 (1973), *City of Akron v. Akron Center for Reproductive Health*, 462 U.S. 416, 447 (1983), *Connecticut v. Menillo*, 423 U.S. 9, 11 (1975) (per curiam), and *Casey*, 505 U.S. at 885 (plurality opinion), indicating approval of physician-only requirements.  None of these cases supports Defendants' position here. The *Roe* and *Akron* dicta they cite merely reflect that in the seventies and early eighties, a physician-only requirement appeared medically reasonable.  *Menillo* held that states can protect patients by prohibiting unlicensed practitioners who "ha[ve] never had any medical training" from performing abortion procedures. 423 U.S. at 9; *id.* at 10 (explaining that *Roe* established a "right to a clinical abortion by medically competent personnel"). And the *Casey* passage Defendants cite expresses that states have "broad latitude to decide that particular functions may be performed only by licensed professionals," 505 U.S. at 885—which does not help Defendants justify a ban on licensed APCs providing abortion.

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - 12

unconstitutionality Defendants recently conceded: both are unconstitutional because they affirmatively burden access to abortion without conferring any benefits.

Defendants' argument that the undue burden test does not apply here relies upon a series of inapposite cases concerning questions about whether and when the state is *obligated* to *fund* abortion, specifically *Maher v. Roe,* 432 U.S. 464 (1977), and *Harris v. McRae*, 448 U.S. 297 (1980), and their progeny. Those cases are limited on their face to funding decisions and questions of affirmative obligation, as opposed to affirmative *restrictions* on abortion such as the APC Ban challenged here. Put differently, the abortion funding cases involve complaints about the failure of the government to act, not an affirmative act by the state that burdens the right to abortion.[10] Indeed, as the Court in *Harris* observed, "government may not place obstacles in the path of a woman's exercise of her freedom of choice," though "it need not remove those *not* of its own creation." 448 U.S. at 316 (emphasis added). The APC Ban is an obstacle of the state's own creation. That its removal could be cast as a benefit is irrelevant. That could be said of every abortion restriction. Clearly, the undue burden test still applies. To hold otherwise, to quote Defendants, would amount to a "'drastic change' in the way the Constitution operates." Motion (Dkt. 33) at 23.

The analogy that Defendants seek to draw between this case and the abortion funding cases rests on the faulty premise that the APC Ban is just a neutral regulation. Thus, removing the restriction and enabling APCs to provide abortions would confer a benefit. Far from being neutral, however, the APC Ban specifically *targets* abortion. Indeed, Idaho law does not single

---

[10] While the parties may disagree over whether the state burdens or discriminates against the constitutional right to abortion where it undertakes to fund maternity care but fails to fund abortion care, there is no question that the state cannot take affirmative steps that unduly burden the ability of pregnant people to procure this care for themselves. *WWH*, 136 S. Ct. at 2300 ("'Unnecessary health regulations that have the purpose or effect of presenting a substantial obstacle to a woman seeking an abortion impose an undue burden on the right.'" (quoting *Casey*, 505 U.S. at 878)).

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - 13

out any other medical procedure this way.  Instead, the state defers to the licensing boards that

regulate each profession, which in turn largely defer to national professional organizations to

define which specific procedures, practices, and competencies are within the permissible scope

of practice of APCs (based upon their skills, training, experience, etc.).  Compl. at n.2.  And

Idaho law permits APCs to prescribe medications comparable to medication abortion and to

perform minor procedures comparable to aspiration abortion.  *Id*. at ¶¶ 57-71.  The APC Ban

deliberately excludes abortion care from that common scheme.  Thus, what Plaintiffs seek is not

some "entitlement" on the part of their patients to "more access," but rather that their abortion

patients not be singled out for medically unjustified *barriers* to care.

Defendants next assert that there is "no state action" because, according to Defendants,

Plaintiffs have not pled sufficient facts to prove that the APC Ban is the "reason why[]" Idaho

women lack access to abortion.  Motion (Dkt. 33) at 26-27.  That is not what the undue burden

standard requires.  Rather, that standard requires Plaintiffs—at this preliminary stage—to

adequately plead that, in the "'real-world context'" of current provider capacity, the APC Ban

burdens access to care.  *W. Ala. Women's Ctr. v. Miller*, 217 F. Supp. 3d 1313, 1328-29 (M.D.

Ala. 2016) (quoting *Planned Parenthood Se., Inc. v. Strange*, 9 F. Supp. 3d. 1272, 1285-86

(M.D. Ala. 2014)).[11]  As the Seventh Circuit recently explained in affirming a preliminary

---

[11]   As the court in *Miller* reasoned:

In *Casev*, the Supreme Court's evaluation of the burdens imposed by a spousal-
notification requirement considered that many women live
in abusive relationships, meaning that requiring notification to an abusive spouse
imposed a potentially insurmountable barrier to obtaining an abortion. *See* 505
U.S. at 888-898 (majority opinion). It did not matter that the notification
requirement could not be said to cause women to live in abusive relationships
or contribute to the existence of such relationships; it was nonetheless dispositive
that the notification requirement had the actual effect of imposing a substantial
obstacle on women's access to abortion.

217 F. Supp. 3d at 1328-29.

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - 14

injunction of an ultrasound requirement for abortion patients, and rejecting the state's argument

that Planned Parenthood could have mitigated the burdens of the statute by making different

business decisions:

> [I]t [is not] appropriate for an opposing party or a court to dictate the best use of
> resources for a business, provided its choices are within the range of
> reasonableness—but particularly in the case of a non-profit agency with limited
> funding seeking to provide the most efficient health care services to a mostly poor
> population.

*Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809,

823 (7th Cir. 2018).

In other words, "[c]ourts must consider the impact of the new ultrasound law based on

the reality of the abortion provider and its patients, not as it could if providers and patients had

unlimited resources." *Id*. at 824.  As the Seventh Circuit explained, this is the same approach

that the Supreme Court took in *WWH*; there, facing a challenge to physical facilities

requirements that would have been costly to providers, the Court made the common sense

assumption "that the facilities would close rather than be able to meet the requirements, despite

the fact that each facility could, in an alternate universe where resources were unlimited, simply

make the changes."  *Id*. (citing *WWH*, 136 S. Ct. at 2318); *cf. Casey,* 505 U.S. at 888-98

(considering effects of spousal notice requirement in context of societal, not governmental,

circumstances, namely the significant incidence of intimate partner violence).  Thus, it is

immaterial that the APC Ban has not caused *physician shortages* in Idaho.  As set forth above,

Plaintiffs have pled more than sufficient facts to demonstrate that, in the "real-world context" of

current provider capacity, the APC Ban burdens access to care.  Compl. ¶¶ 72-93.

In a nutshell, Defendants' argument conflates the question of whether there is "state

action" with the question of whether that action unduly burdens the right to abortion.  The

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - 15

answer to the former question is clear.  The APC Ban constitutes state action.  The latter is a

question of fact that cannot be resolved on a motion to dismiss.  As the court in *Strange*

observed:

> First: Context matters. Courts must perform a careful, fact-specific analysis of
> how the restrictions would impede women's ability to have an abortion, in light of
> the circumstances of their lives. Second: Courts must examine the strength of the
> State's justifications for regulations, not just the effects of the regulation.

9 F. Supp. 3d at 1285.  The Court simply cannot conduct this analysis on a motion to dismiss,

and Defendants have cited no authority to the contrary.

The law is clear: any statute the unduly burdens the right to abortion prior to viability is

unconstitutional.  That the removal of the statute would be of benefit, of course, is irrelevant.

That is true of all burdens.  Whether to allow APCs to provide abortion care, therefore, is not a

question over which the legislature has unfettered discretion, as Defendants suggest.  Indeed, the

scope of practice of medical professionals is an area that the legislature deliberately has refrained

from entering and for good reason—except when it comes to abortion.  The evidence will show,

assuming Plaintiffs are allowed to present it, that the decision of the legislature to intervene and

single out this care for heightened restriction violates both the Due Process Clause and the Equal

Protection Clause.

### C.   Plaintiffs' Equal Protection Claim Is Factually Sufficient and Legally Plausible.

#### 1.   The APC Ban Violates the Equal Protection Rights of Plaintiffs and Their Patients.

The Equal Protection Clause "commands that . . . all persons similarly situated should be

treated alike."  *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985) (citing

*Plyler v. Doe,* 457 U.S. 202, 216 (1982)).  The Idaho APC Ban violates this command in two

ways.  First, the APC Ban violates the equal protection rights of patients by singling out

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - 16

abortion—a medical procedure that only women[12] require and to which they have a fundamental right—for stricter regulation than comparable health care services without so much as a rational basis.  Second, the APC Ban violates the equal protection rights of APCs by treating APCs differently from physicians and APCs providing early abortion care differently from other APCs, all of whom are similarly situated for all purposes relevant to the APC Ban, again without any rational basis.

> *a)*        ***The APC Ban Violates the Equal Protection Rights of Patients.***

The Court should subject the APC Ban to heightened scrutiny because it burdens the fundamental right to abortion and because it discriminates on the basis of gender.  A law that burdens a fundamental right is subject to strict scrutiny, meaning that the government must demonstrate that the law furthers a compelling state interest, and that the classification is narrowly tailored to address that interest.  *Shapiro v. Thompson*, 394 U.S. 618, 638 (1969), *overruled in part on other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974); *Skinner v. State of Okla. ex rel. Williamson*, 316 U.S. 535, 541 (1942) (applying strict scrutiny and invalidating statute allowing for sterilization as a penalty for larceny but not embezzlement).

In addition, laws that establish gender-based classifications are subject to intermediate scrutiny, which means that they must serve an important government objective and be substantially related to the achievement of that objective.  *See Craig v. Boren*, 429 U.S. 190 (1976) (law restricting the sale of low-alcohol beer to 18-year-old women and 21-year-old men violated the Equal Protection Clause); *Frontiero v. Richardson*, 411 U.S. 677 (1973) (Air Force violated equal protection rights of appellants, Air Force lieutenant and her husband, by refusing to recognize the lieutenant's husband as her dependent).

---

[12] Plaintiffs use "women" as a short-hand for a patient seeking abortion care, but note that gender non-conforming patients and men who are transgender may also utilize such services and would thus also suffer irreparable harm as a result of the APC Ban.

In *Geduldig v. Aiello*, 417 U.S. 484 (1974), a widely criticized decision, the Supreme Court held that pregnancy-based distinctions (including abortion restrictions) are gender-neutral on their face. *Id.* (rejecting the claim that a state disability insurance system that denied coverage to certain disabilities resulting from pregnancy discriminated on the basis of sex in violation of the Equal Protection Clause of the Fourteenth Amendment).[13]  Since *Geduldig,* however, the Court implicitly has acknowledged that some pregnancy-based distinctions may amount to sex discrimination under the Equal Protection Clause. *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 733 n.6 (2003) (identifying various instances of unconstitutional state discrimination on the basis of gender, which provided Congress with the authority to respond with FMLA, remedial and prophylactic legislation passed under section 5 of the Fourteenth Amendment).[14]  As the

---

[13] When a statute gender-neutral on its face is challenged on the ground that it disproportionately affects women, a twofold inquiry is appropriate. The first question is whether the statutory classification is indeed neutral in the sense that it is not gender-based. If the classification itself, covert or overt, is not based upon gender, the second question is whether the adverse effect reflects invidious gender-based discrimination. *Tucson Woman's Clinic*, 379 F.3d at 547-49 (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 274 (1979)).  Laws that are truly gender-neutral on their face, however, impact some members of both genders. *See, e.g., Pers. Adm'r of Mass.*, 442 U.S. at 270 (rejecting an Equal Protection Clause challenge to a Massachusetts law giving employment preference to military veterans, a class which in Massachusetts was over 98% male).  This is why a higher standard of proof is required—to show that behind the disparate impact of the law is some constitutionally impermissible purpose. Laws that draw distinctions on the basis of pregnancy (and abortion), however, do not impact cisgender men.  Unlike other types of claims involving disparate impact analysis, underlying the Court's rulings with respect to the application the Equal Protection Clause to abortion restrictions is the notion that these restrictions do not affect all women.  That is simply not the case. Laws that serve no legitimate purpose other than to stigmatize women's exercise of their constitutional right to abortion offend the dignity of all women.  These laws demean people who can become pregnant, suggesting that their decisions about their own health are less worthy of respect than the decisions of others.

[14] Courts have recognized as well, that reproductive freedom is critical to gender equality. *Casey*, 505 U.S. at 856 ("The ability of women to participate equally in the economic and social life of the Nation has been facilitated by their ability to control their reproductive lives."); *Erickson v. Bartell Drug Co.,* 141 F. Supp. 2d 1266, 1273 (W.D. Wash. 2001) ("[T]he adverse economic and social consequences of unintended pregnancies fall most harshly on women and interfere with their choice to participate fully and equally in the 'marketplace and the world of ideas.'" (quoting *Stanton v. Stanton*, 421 U.S. 7, 14-15 (1975)); *Comm. to Defend Reprod. Rights v. Myers*, 625 P.2d 779, 797 (Cal. 1981) ("This right of personal choice is central to a woman's control not only of her own body, but also to the control of her social role and personal destiny.").  Indeed, as Justice Ginsburg observed in her dissent in *Gonzales v. Carhart*, "legal

---

Ninth Circuit in *Tucson Woman's Clinic*, 379 F.3d at 548, observed, "*Hibbs* strongly supports [the] argument that singling out abortion in ways unrelated to the facts distinguishing abortion from other medical procedures is an unconstitutional form of discrimination on the basis of gender."

The court in *Tucson Women's Clinic* ultimately concluded that "even if laws singling out abortion can be judicially recognized as not gender-neutral, where such laws facially promote maternal health or fetal life, *Casey* replaces the intermediate scrutiny such a law would normally receive under the equal protection clause with the undue burden standard." *Id.* at 549. This merger of analyses between the Due Process and Equal Protection Clauses further reinforces the importance of comparing how Defendants treat patients seeking an abortion and other patients and considering whether any differences are medically justified, which is already part of the analysis in *WWH*, *see* 136 S. Ct. at 2315 (comparing abortion restrictions to less stringent restrictions on higher-risk procedures such as colonoscopies).[15]  As Plaintiffs have pled, the APC Ban fails this comparison because Idaho permits APCs to provide treatments that are of comparable or higher risk than early abortion care.  Compl. ¶¶ 1-3, 32-43.

The APC Ban bears no logical relationship to a valid state interest.  It does not promote maternal health.  Nor can the state justify the restriction based solely on its interest in promoting

---

challenges to undue restrictions on abortion procedures do not seek to vindicate some generalized notion of privacy; rather, they center on a woman's autonomy to determine her life's course, and thus to enjoy equal citizenship stature." 550 U.S. 124, 172 (2007) (Ginsburg, J., dissenting). Thus, while the Supreme Court has recognized a right to abortion implicit in the Due Process Clause of the Fourteenth Amendment, *Casey*, 505 U.S. at 846, laws that place undue restrictions on abortion access also violate the Equal Protection Clause.

[15] Further, as the court in *Tucson Women's Clinic* noted, elements of intermediate scrutiny review particular to sex-based classifications, such as the rules against paternalism and sex-stereotyping, are evident in the *Casey* opinion, and should be considered by courts assessing the legitimacy of abortion regulation under the undue burden standard. *Tucson Woman's Clinic*, 379 F.3d at 547-49 (citing *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 132 (1994); *Frontiero*, 411 U.S. at 684; *Casey*, 550 U.S. at 882).

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - 19

fetal life.  As the Supreme Court made clear in *Hodgson v. Minnesota*, 497 U.S. 417, 435 (1990),

"[a] state policy favoring childbirth over abortion is not in itself a sufficient justification for

overriding the woman's decision or for placing 'obstacles—absolute or otherwise—in the

pregnant woman's path to an abortion.'"  *Id.* (quoting *Maher*, 432 U.S. at 474, and citing *Harris*,

448 U.S. at 315-16).

As singling out abortion as outside the scope of services that a pregnant person can

receive from an APC serves no valid state interest, the APC Ban violates the equal protection

rights of pregnant people.[16]

> b)    ***The APC Ban Violates the Equal Protection Rights of APCs.***

By distinguishing between qualified APCs and physicians, who for all purposes relevant

to the provision of early abortion care are similarly situated, the APC Ban violates the equal

protection rights of APCs. The APC Ban also violates these rights by distinguishing between

APCs providing early abortion care and APCs providing other care comparable in risk and

complexity.

If a statute treats similarly situated classes of persons differently but does not implicate a

fundamental right or burden a suspect class, there still "must exist some rational connection

between the state's objective for its legislative classification and the means by which it classifies

its citizens." *Silveira v. Lockyer*, 312 F.3d 1052, 1088 (9th Cir. 2002) (holding that there was no

rational basis for the establishment of an exemption for retired peace officers from a California

statute that imposed certain requirements on owners of assault weapons), *abrogated on other*

*grounds by District of Columbia v. Heller*, 554 U.S. 570 (2008); *Rothery v. County of*

---

[16] Though the standard for analyzing Plaintiffs' equal protection claims may overlap with the standard for analyzing their claims under the Due Process Clause, this Court should not ignore these claims.  Until courts fully recognize that senseless abortion restrictions also constitute unlawful sex discrimination under the Equal Protection Clause, all people with the capacity to become pregnant will continue to be relegated to the status of second-class citizens.

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - 20

*Sacramento*, 700 F. App'x 782 (9th Cir. 2017).  "A statutory exemption that bears no logical relationship to a valid state interest fails constitutional scrutiny." 312 F.3d at 1091.

Defendants do not even attempt to provide a legitimate reason for restricting the provision of abortion care to physicians only, or for allowing APCs to provide other low-risk medical care but not abortion.  Instead, Defendants point to irrelevant distinctions between APCs and physicians and ask the Court to conclude as a matter of law that the two groups are not similarly situated and thus the Equal Protection Clause does not apply.[17]

When determining if groups are similarly situated the "analysis must focus on factors of similarity and distinction pertinent to the state's policy, not factors outside the realm of its . . . concern." *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 967 (9th Cir. 2017) (finding that DACA recipients were similarly situated to other undocumented immigrants for purposes of determining eligibility for drivers licenses).[18]  In *City of Cleburne,* 473 U.S. at 447-50, for example, the Supreme Court struck down a zoning ordinance that required adult group homes to obtain a special use permit, but did not require boarding houses, nursing homes, hospitals, sanitariums, and other multiple-dwelling facilities to do the same.  In evaluating whether these entities were similarly situated for purposes of the challenge to the ordinance, the relevant question was not whether these entities were identical in all respects.  Of course, they were not.  Indeed, many of them served different populations and almost certainly required different licensure.  What was relevant was that they were all multi-dwelling facilities, which meant that

---

[17] Defendants also note that medical practitioners are not a suspect class.  Motion (Dkt. 33) at 25.  Plaintiffs are not relying on any such classification.

[18] *See also Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010) (employees "must only be similar in all material respects," and materiality "depend[s] on context and the facts of the case" (internal quotation marks and citation omitted)).

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - 21

their impact on the community would be similar.  Thus, there was no rational basis for the zoning ordinance to treat one more harshly than the others.

Likewise, the "factors of similarity and distinction pertinent to" the APC Ban are the skills and abilities necessary to provide safe abortion care, not the specific licensure and education requirements that apply to these groups, as Defendants suggest.  Since these distinctions do not render APCs any less qualified than physicians to provide abortion care, they are not relevant to determining whether APCs and physicians are similarly situated for purposes of determining whether the APC Ban violates the equal protection rights of APCs.  Plaintiffs' Complaint alleges more than sufficient facts to demonstrate that qualified APCs have the skills and abilities to provide abortion care as safely and effectively as physicians.  Compl. ¶¶ 28-44.  Thus, they are *identically* situated with respect to the state's asserted interest in protecting the health and safety of abortion patients.

Defendants offer no explanation as to how any of the distinctions they identify provide a rational basis for restricting the provision of abortion care to licensed physicians.  As authority for this claim, Defendants cite a single case from the California State Court of Appeal in which a nurse practitioner who was disciplined for drinking and driving sued the state board of nursing alleging, among other things, that the penalty that he received was out of step with the penalty that a physician would have received.  *Sulla v. Bd. of Registered Nursing,* 140 Cal. Rptr. 3d 514, 524 (Ct. App. 2012).  In *Sulla*, the trial court found in favor of the nurse practitioner and reversed the disciplinary action.  The Court of Appeal reversed, finding that the plaintiff had not demonstrated that he had been "treated more harshly than a physician would have been under similar circumstances."  *Id.*  Thus, the *Sulla* court did not reach the question of whether APCs and physicians were similarly situated in that context, and if so whether there was any basis for

distinguishing between the two groups.  In contrast here, Defendants have not identified any nexus between the APC Ban and any legitimate state interest and there is no question that the law treats APCs more harshly than physicians.

Defendants also identify the different supervision requirements and scopes of practice of APCs and physicians as a justification for treating them differently.  APRNs, however, practice independently, and though PAs practice under the supervision of a physician (which need not be in person), this requirement does not impact their ability to safely and effectively provide abortion care.  Moreover, all medical practitioners have different scopes of practice depending upon their skills, abilities, and experience.  What is relevant is whether early abortion care would be within the legal scope of practice of APCs without the APC Ban, and the Complaint contains more than sufficient factual allegations to illustrate that it would.

In any event, whether physicians and APCs, or APCs providing abortion care and other APCs, are similarly situated for purposes of analyzing whether the APC Ban violates the equal protection rights of APCs is inherently a question of fact.  *See, e.g., Cortes v. County of Santa Clara*, 630 F. App'x 731, 732 (9th Cir. 2016) (reversing a district court order granting summary judgment in favor of defendant employer under the California Fair Employment and Housing Act, observing that "'whether two employees are similarly situated is ordinarily a question of fact'" (quoting *Beck v. United Food & Commercial Workers Union, Local 99*, 506 F.3d 874, 883 n.4 (9th Cir. 2007) (affirming judgment of district court in favor of female employee's in Title VII action against union, where the union had provided more aggressive representation of two men than it had of employee and her female coworker, and employee was similarly situated to other male employees who had received more favorable treatment))).[19]

---

[19] While these cases deal with claims under the California Fair Employment and Housing Act and Title VII, rather than the Equal Protection Clause, the principle is the same.  Two classes

There simply is no basis for the Court to conclude, at this threshold stage on a motion to dismiss with no factual record developed, that APCs providing early abortion care are not similarly situated to physicians providing this care or to other APCs providing comparably low-risk care.

c)   *"Abortion Is Unique" Is Not a Sufficient Justification for Singling Out Abortion for Greater Restriction Than Other Medical Procedures That Carry the Same or Greater Risk.*

Defendants further offer as justification for singling out abortion for greater restriction than other medical procedures that carry the same risk that "[a]bortion is inherently different from other medical procedures" because it "involves the purposeful termination of a potential life." *Harris*, 448 U.S. at 325. This argument is without merit. To survive review, challenged laws must be rationally related to the *asserted* state interest in promoting the safety of abortion care. There is no end run around equal protection simply because the Idaho law involves abortion. Under this theory, no abortion restriction could ever implicate equal protection, which is plainly wrong. Numerous courts have struck down laws that single out abortion under the rational basis test. *See, e.g., Planned Parenthood of Ind. & Ky., Inc. v. Comm'r, Ind. Dep't of Health*, 64 F. Supp. 3d 1235, 1254-60 (S.D. Ind. 2014); *Planned Parenthood of Greater Ohio v. Hodges,* 188 F. Supp. 3d 684, 693-94 (S.D. Ohio 2016). *Harris* is inapposite because in that case the state *asserted* an interest in potential life as its basis for not affirmatively *funding* abortion, *see* 448 U.S. 297, *supra* Part III(B)(3).

**D.   Plaintiffs Complied with the Notice Pleading Requirements of Federal Rule of Civil Procedure 8(a)(2).**

Defendants contend, in the alternative, the Complaint should be dismissed for failure to comply with Federal Rule of Civil Procedure 8(a)(2). Defendants' argument is baseless.

---

need not be identical in order to be similarly situated. If they were, they would be one class, not two. Instead, the relevant question is whether they are similarly situated in all material respects.

Under Rule 8(a)(2), a pleading need consist only of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A basic objective of the rule is to avoid civil cases turning on technicalities. This is achieved by requiring a pleading to give the opposing party fair notice of the nature and basis of the pleader's claim. *See* 5 Charles A. Wright et al., *Federal Practice and Procedure* § 1215, Westlaw (database updated Apr. 2019); *accord Starr v. Baca,* 652 F.3d 1202, 1212 (9th Cir. 2011) ("The theory of Rule 8(a), and of the federal rules in general, is notice pleading."). Thus, to satisfy the rule, a plaintiff need only plead sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively, and the pleading must contain factual allegations that, when taken as true, plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. *See Merritt v. Countrywide Fin. Corp.,* 759 F.3d 1023, 1033 (9th Cir. 2014); *Starr,* 652 F.3d at 1216.

The Complaint plainly meets the notice pleading standard of Rule 8(a). Defendants' contention that the Complaint lacks factual allegations about "how or why the laws operate as an obstacle to a woman seeking an abortion" (Motion (Dkt. 33) at 28) is flatly wrong. In fact, the Complaint contains more than sufficient allegations to put Defendants on notice of the basis for Plaintiffs' challenge to the constitutionality of Idaho's APC Ban. As set forth in more detail in the allegations in the Complaint, the APC Ban places an undue burden on a woman's right to abortion because it limits access to abortion services without medical justification.

- There are only five locations in Idaho where a woman can access abortion care, and only three of them are clinics. Compl. ¶ 72. The majority of women in Idaho live in counties without abortion clinics. *Id.* Even for women who live in counties where abortions are performed, physician availability is limited. *Id.* ¶¶ 4, 79-80. As a result, many women in Idaho seeking abortions face significant and expensive travel burdens and delayed access to care, preventing some women from obtaining an abortion altogether. *Id.* ¶¶ 72-78.

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - 25

- There are APCs in Idaho who are qualified and willing to perform abortions. *Id.* ¶¶ 11, 57-71.

- Idaho's APC Ban, however, makes it "'unlawful for any person other than a physician to cause or perform an abortion.'" *Id.* ¶ 25 (quoting Idaho Code § 18-608A).

- Because of the APC Ban, the times at which a woman can obtain an abortion in Idaho are strictly limited by physician availability. *Id.* ¶¶ 79-80.

- These limits regularly delay patients seeking care, imposing on them increased medical risk, increased costs, reduced medical options, and other harms. *Id.* ¶¶ 82-93.

- If APCs were permitted to perform abortions in Idaho, access for women would not be so severely limited. Access to abortion care would be available in Idaho six days of the week, for longer hours (including evenings and weekends) and in more communities across the state. *Id.* ¶¶ 94-96.

In sum, the Complaint offers ample factual allegations to put Defendants on notice of how the APC Ban operates as an obstacle to a woman seeking abortion by unreasonably restricting the ability of qualified medical professionals to provide abortion care in locations and at times that limited physicians are unable to meet.

Finally, Defendants bizarrely argue a lack of notice pleading because the allegations in the Complaint are "confined to events taking place almost 20 years after Idaho's physician-only laws were enacted" and, as such, Plaintiffs "do not address the impact the laws had on abortions at the time of enactment." Motion (Dkt. 33) at 29. Defendants cite no authority, nor is there any, supporting their argument that the undue burden standard requires Plaintiffs to show a law's burdens at the time it was enacted, as opposed to the present. *Contra Casey*, 505 U.S. at 877 ("A finding of an undue burden is a shorthand for the conclusion that a state regulation *has* the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." (emphasis added)). Simply put, a law that unduly burdens patients does not become less unconstitutional under time, and this law has only become more irrational and harmful over time with: the advent of safe, legal medication abortion; the standardization of the

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - 26

APC professions, their increasing scope of practice to cover medical care comparable to or more complex than early abortion care, and the increasing recognition that they are essential to expanding access to care for rural and underserved populations; and the accumulated evidence and firm medical consensus that APCs can provide early abortion care just as safely as physicians.

## IV.   CONCLUSION

For all the foregoing reasons, Defendants' motion to dismiss should be denied.  In the alternative, should the Court determine any pleading deficiency exists, dismissal should be without prejudice and Plaintiffs should be given leave to amend.

DATED:  April 19, 2019.                        STOEL RIVES LLP


                                               */s/ Nicole Hancock*_____
                                               Nicole Hancock

                                               *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2019, I served a copy of the foregoing **RESPONSE TO MOTION TO DISMISS (Dkt. 33)** on CM/ECF Registered Participants as reflected on the Notice of Electronic Filing as follows:

Cynthia Yee Wallace – cynthia.wallace@ag.idaho.gov

Attorney for Defendants

/s/ Nicole C. Hancock
Nicole C. Hancock
Attorneys for Plaintiffs

RESPONSE TO MOTION TO DISMISS (Dkt. 33) - 28

101305935.5 0099880-01204