LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
Chief of Civil Litigation

CYNTHIA YEE-WALLACE, ISB #6793
MEGAN A. LARRONDO, ISB #10597
Deputy Attorneys General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, ID  83720-0010
Telephone:	(208) 334-2400
Facsimile:	(208) 854-8073
cynthia.wallace@ag.idaho.gov
megan.larrondo@ag.idaho.gov
	Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PLANNED PARENTHOOD OF THE GREAT NORTHWEST AND THE HAWAIIAN ISLANDS, a Washington corporation; MARY STARK, on behalf of herself and her patients,<br><br>Plaintiffs,<br><br>v.<br><br>LAWRENCE G. WASDEN, et al.,<br><br>Defendants. | Case No. 1:18-cv-00555-BLW<br><br>**REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS** |

## I.    REPLY

**A.  *Mazurek* establishes that Idaho's physician-only laws[1] are constitutional.**

*Mazurek* established a bright line rule that states may restrict the performance of abortions to physicians. *Mazurek v. Armstrong*, 520 U.S. 968 (1997) (per curiam).  Cases are not

---

[1] Idaho Code §§ 18–608A, 18–605(3).

decided in a vacuum.  The underlying decisions and the briefing that the Court reviewed in deciding *Mazurek* are highly relevant to understanding that decision.  It is improper to urge this Court to ignore the lower court's decisions and the arguments to which the U.S. Supreme Court was responding when it decided *Mazurek*.

While the Ninth Circuit Court of Appeals in *Mazurek* did take issue with the district court's analysis of the legislative purpose behind the law, the fundamental issue Montana asked the U.S. Supreme Court to review on *certiorari* was whether it was settled law that states could limit the performance of abortions to physicians.  (Dkt. 34–1 at pp. 9–10, 16–20.)  Reading *Mazurek* in complete context, the U.S. Supreme Court answered, "yes."

Plaintiffs further contend that the undue burden analysis is solely fact-driven, apparently urging this Court to find that U.S. Supreme Court precedent has little to no value.  This is plainly incorrect.  The U.S. Supreme Court itself relied extensively on its prior precedent in concluding that Montana's physician-only laws were permissible.[2]  *See Mazurek*, 520 U.S. at 971–76.  Further, in deciding *Mazurek*, the Court rejected the plaintiff's fact-based argument that "'all health evidence contradicts the claim that there is any health basis' for the law" with the following response:

> But this line of argument is squarely foreclosed by *Casey* itself.  In the course of upholding the physician-only requirement at issue in that case, we emphasized that "[o]ur cases reflect the fact that the Constitution gives the States broad latitude to decide that particular functions may be performed only by licensed professionals, *even if an objective assessment might suggest that those same tasks could be performed by others*."

---

[2] Plaintiffs take issue with the U.S. Supreme Court's reading of its own precedent, arguing that these cases do not support the very proposition for which the U.S. Supreme Court cited them. *See Mazurek*, 520 U.S. at 971–73 (*citing Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 884–85 (1992); *Akron v. Akron Ctr. for Reprod. Health, Inc.*, 462 U.S. 416, 447 (1983); *Connecticut v. Menillo*, 423 U.S. 9, 11 (1975) (per curiam); *Roe v. Wade*, 410 U.S. 113, 165 (1973)) in support of the conclusion that states may restrict the performance of abortions to physicians only).

*Id.* at 973 (quoting *Casey*, 505 U.S. at 885) (emphasis in original).  In other words, the Court disposed of a factual argument by reference to precedent.

No matter how Plaintiffs try to slice it, the evidence and arguments before the Supreme Court in *Mazurek* are substantially similar to those before this Court, or even more compelling.[3] In *Mazurek*, physician's assistant Susan Cahill had actually and safely performed first-trimester abortions for years in Montana, and was being taken out of circulation by the physician-only laws.  Resp'ts' Br. Opp'n at 3, *Mazurek*, 520 U.S. 968 (1997) (No. 96–1104), 1997 WL 33484620, at *3.  Thus, access was arguably being reduced.  Here, Plaintiffs are seeking to expand access by *adding* to the pool of abortion providers.  And, the evidence before the *Mazurek* Court was that non-physicians could perform abortions as safely as physicians.  *Armstrong v. Mazurek*, 906 F. Supp. 561, 566 (D. Mont. 1995); Resp'ts' Br. Opp'n at 7, *Mazurek*, 520 U.S. 968 (1997) (No. 96–1104); (*see* Dkt. 1 ¶¶ 45–48.).

**B.  *Whole Woman's Health* did not overrule *Mazurek*.**

Plaintiffs also argue that *Mazurek* does not apply, asserting that the burdens of the physician-only laws outweigh their medical benefits and citing the Supreme Court's 2016 decision in *Whole Woman's Health v. Hellerstedt*, — U.S. —, 136 S. Ct. 2292 (2016) ("*WWH*"). (Dkt. 43 at 7–9.)  Plaintiffs effectively argue the U.S. Supreme Court overruled its decision in *Mazurek* with *WWH*.  Plaintiffs are wrong.

Nothing in *WWH* indicates that the decision was intended to overrule *Mazurek*, nor can

---

[3] The date that the FDA approved medication abortions is irrelevant to the fundamental factual overlap between this case and *Mazurek*.  (*See* Dkt. 33--1 at pp. 13–15.).  Defendants also do not concede the Plaintiffs' argument that APCs have only recently come onto the scene as viable first-trimester abortion providers.  That said, Defendants accept this as true for the purposes of the instant motion to dismiss.

*WWH* reasonably be read to eliminate the "substantial obstacle" and "undue burden" components of the analysis established by *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 878 (1992) (*Casey*).  The decision in *WWH* actually reaffirmed the undue burden standard developed in *Casey*, which the U.S. Supreme Court applied in *Mazurek*.  *See June Med. Servs. L.L.C. v. Gee*, 905 F.3d 787, 803 (5th Cir. 2018) (*petition for cert. filed*, (U.S. April 19, 2019) (No. 198-1323)).  In fact, the very first sentence of *WWH* is

> In *[Casey]*, a plurality of the Court concluded that there "exists" an "undue burden" on a woman's right to decide to have an abortion, and consequently a provision of law is constitutionally invalid, if the "*purpose or effect*" of the provision "*is to place a substantial obstacle* in the path of a woman seeking an abortion before the fetus attains viability."

*WWH*, 136 S. Ct. at 2299 (emphasis in original).  The Court went on to "decide whether two provisions of Texas's House Bill 2 violate the Federal Constitution *as interpreted in Casey*."  *Id.* (emphasis added).

In *WWH*, the Court had not previously determined whether the types of regulations at issue were substantial obstacles to a woman's right to an abortion.  As a result, the Court could not rely on its prior precedent to short-cut its benefits versus burdens analysis to determine whether the challenged regulations constituted a substantial obstacle.  Here, the U.S. Supreme Court has already stated on multiple occasions that physician-only laws are constitutionally permissible.  *See Mazurek*, 520 U.S. at 971–73 (*citing Casey*, 505 U.S. at 884–85; *Akron*, 462 U.S. at 447; *Menillo*, 423 U.S. at 11; *Roe*, 410 U.S. at 165).   Here, the impact of *WWH* is solely to affirm that *Mazurek* remains good law.  Nothing in *WWH* indicates that the Supreme Court intended to completely upend decades of post-*Casey* precedent, as would be the case if Plaintiffs

are correct in their interpretation.[4]  As the U.S. Supreme Court has *already concluded* that physician-only laws are constitutionally permissible, this Court need not apply the balancing test detailed in *WWH* or give *WWH* further consideration.

    **C. Even if this Court believes that *WWH* overruled *Mazurek*, only the U.S. Supreme Court may make that determination.**

Should this Court still have concerns that *WWH* overruled *Mazurek*, it is still bound to follow *Mazurek* in deciding Defendants' motion to dismiss.  "[I]t is [the Supreme Court's] prerogative alone to overrule one of its precedents." *Bosse v. Oklahoma*, — U.S. —, 137 S. Ct. 1, 2 (2016) (per curiam) (quoting *United States v. Hatter*, 532 U.S. 557, 567 (2001)).  An attempt by a lower court to overrule the U.S. Supreme Court's precedent based on some sense that the Court's position has changed since an earlier ruling "would almost always be an impertinent and futile adventure." *Cross v. Bruning*, 413 F.2d 678, 680 (9th Cir. 1969); *United States v. Johnson*, 913 F.3d 793, 801 (9th Cir. 2019) ("this panel has no power to overrule circuit precedent, let alone that of the Supreme Court.")

Lower courts "are bound to follow a controlling Supreme Court precedent until it is *explicitly* overruled by that Court." *Nunez-Reyes v. Holder*, 646 F.3d 684, 692 (9th Cir. 2011) (emphasis added) (citation omitted); *see also Luna v. Kernan*, 784 F.3d 640, 649 (9th Cir. 2015). "If a precedent of this Court has direct application in a case, yet appears to rest on reasons

---

[4] One of the reasons the Supreme Court follows its prior decisions under the doctrine of stare decisis is to encourage interests of stability and judicial efficiency.  Brandon J. Murrill, *The Supreme Court's Overruling of Constitutional Precedent*, Congressional Research Service, 6, 7 n.46 (updated September 24, 2016), https://fas.org/sgp/crs/misc/R45319.pdf (last visited May 1, 2019) (citing Benjamin N. Cardozo, *The Nature of the Judicial Process* 149 (1921) ("[T]he labor of judges would be increased almost to the breaking point if every past decision could be reopened in every case ... ")).  If *WWH* really undid the *Casey* undue-burden precedent to be replaced by a factual balancing test, every single abortion-related regulation must now be relitigated, from mandatory waiting periods to informed consent requirements to long recognized reporting requirements.

rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477 (1989). Because *Mazurek* has direct application to Plaintiffs' claims, this Court must apply it here.

> **D. Plaintiffs seek to expand the right recognized in *Roe* beyond what is constitutionally permissible and thus they fail to state a claim upon which relief can be granted**.

In response to Defendants' motion to dismiss, Plaintiffs incorrectly claim the cases cited by Defendants, *Maher v. Roe*, 432 U.S. 464 (1977) and *Harris v. McRae*, 448 U.S. 297 (1980), are "inapposite," and thus inapplicable. Though the facts in *Harris* and *Maher* are different, the legal reasoning squarely applies. The dispositive legal analysis in this case does not turn on the government's failure to act versus taking some affirmative action or whether the law is "neutral" or "confer[s] a benefit." (*See* Dkt. 43 at 13.) It turns on the nature and scope of the right recognized in *Roe v. Wade*. The right recognized in *Roe* is not "expanded access" to early abortions. Plaintiffs' substantive due process violation claim is not cognizable and fails to state a claim upon which relief can be granted.

In *Maher*, the regulation at issue did not impose on the right recognized in *Roe* as it was unlike regulations involving government compulsion. Here, this is similarly not a case where the government passed a law that, for example, *forces* physicians to obtain admitting privileges at a hospital, or *requires* abortion facilities to conform to the standards of a surgical center, with the outcome of forcing the closure of over half the abortion clinics in a state, such as in *WWH*, 136 S. Ct. at 2296. Here, like in *Maher*, a woman still has the right to choose a pre-viability abortion. Further, the laws do not restrict abortions to Mondays, Wednesdays and Thursdays. They do not restrict abortions to facilities in Boise, Meridian, and Twin Falls. They do not restrict abortions from occurring on nights and weekends. This is also not a case where the State has somehow

prohibited abortion access by, for example, banning a particular abortion method or prohibiting the performance of abortions in medical emergencies without first obtaining parental consent, such as in *Stenberg v. Carhart*, 530 U.S. 914, 938 (2000), and *Ayotte v. Planned Parenthood of Northern. New England*, 546 U.S. 320, 327 (2006).  Rather, this case is about expanding access to abortion.

Further, the regulation in *Maher* expressed Connecticut's value judgment favoring childbirth over abortion.  432 U.S. at 474.  Connecticut allowed one thing, but not another: payment for "medically necessary" abortions, but not for nontherapeutic abortions.  Idaho too has made a value judgment about the qualifications and standards applicable to individuals who perform abortions.  Idaho has profound respect for the life of the unborn.  This respect is evidenced by its requirement that only physicians should perform abortions which—unlike any other medical procedure—involves the purposeful termination of a potential life.  *Harris*, 448 U.S. at 325; *Casey*, 505 U.S. at 952.  Idaho allows physicians to perform the unique act of abortion, but not anyone else with no, lesser, or different qualifications.  And, since no one other than a physician has ever legally been allowed to perform abortions in the state of Idaho, the law does not impose "a restriction on access to abortions that was not already there."  *See* Idaho Code §§ 18–606; 18–608; *Maher*, 432 U.S. at 474.  The physician-only law does not impinge on a woman's right to choose a pre-viability abortion.

In *Harris*, plaintiffs challenged the Hyde Amendment.  448 U.S. at 300–01.  The Supreme Court relied on the reasoning in *Maher*, *id.* at 313–15, and held that a woman's freedom of choice does not carry with it a *constitutional entitlement* to the financial resources to avail herself of the full range or protected choices and "does not confer an entitlement to such funds as may be *necessary to realize all of the advantages of that freedom*," *id.* at 316–18

(emphasis added). And, the government "need not remove" obstacles "not of its own creation." *Id*. at 316. This reasoning is equally applicable here.

Plaintiffs claim that they are constitutionally entitled to have APCs perform abortions to allow "expanded access" for early abortions six days per week, including nights and weekends. (Dkt. 1 at 22 and ¶¶ 79, 81, 94, 96.) But the right to choose a pre-viability abortion does not translate into an obligation on the State to change its standards to allow all APCs—or anyone else—to perform abortions so that women can realize all of the advantages of their choice. *See, e.g.*, *Webster v. Reprod. Health Servs.*, 492 U.S. 490, 507–08 (1989) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)). Plaintiffs' substantive due process claim is defective at a basic level because it goes beyond the right recognized in *Roe* and reaffirmed in *Casey*. Defendants' motion to dismiss should be granted.

E. **In the alternative, even if the above arguments are not dispositive, Plaintiffs' substantive due process claim should still be dismissed because it is not plausible.**

1. **Plaintiffs have not pled a viable due process violation because the alleged obstacles are not substantial on their face.**

Even assuming that *Mazurek* does not dispose of Plaintiffs' substantive due process claim and assuming the right recognized in *Roe* entitles Plaintiffs to the relief they seek, Plaintiffs' Complaint still does not survive a motion to dismiss. This is because the alleged obstacles pled in the Complaint are not "substantial" on their face.[5]

Plaintiffs incorrectly assert that *WWH* established "when a law fails to confer 'benefits sufficient to justify the burdens,' those burdens are 'undue,' and thus unconstitutional." (Dkt. 43 at 15 (quoting *WWH*, 136 S. Ct. at 2300).) This is a misreading of *WWH*. As discussed above,

---

[5] Plaintiffs' reading of *Mazurek* concedes that U.S. Supreme Court precedent establishes the physician-only laws were not enacted for an improper purpose. (*See* Dkt. 43.)

*WWH* did not purport to change—nor did it change—the undue burden standard established by *Casey*. It merely reinforced *Casey*'s undue burden analysis and addressed how the court must evaluate the evidence in determining whether the health regulation constitutes a substantial obstacle and an undue burden. See *WWH*, 136 S. Ct., at 2300, 2309, 2311.

But as *Casey* established decades ago, not just any burden is sufficient to result in a constitutional injury. See *Casey*, 505 U.S. at 874 ("[T]he incidental effect of making it more difficult or more expensive to procure an abortion cannot be enough to invalidate it. Only where state regulation imposes an undue burden on a woman's ability . . . does the . . . State reach into the heart of the liberty protected by the Due Process Clause."). *WWH* is therefore properly read to establish that "even regulations with a minimal benefit are unconstitutional only where they present a *substantial obstacle* to abortion." *June Med. Servs., L.L.C.*, 905 F.3d at 803. "A minimal burden even on a large fraction of women does not undermine the right to abortion." *Id.* In other words, even if the benefits outweigh the burdens, the asserted burdens must still be a substantial obstacle to render a law unconstitutional. Any other reading "would neuter *Casey*, and any reasonable reading of *WWH* shows that the Court only reinforced what it had said in *Casey*." *Id.*

Further, *WWH* suggests that even a law that lacks or has few medical benefits could still be found constitutionally permissible if the burdens it imposes are themselves negligible. "[U]nder the undue burden standard a State is permitted to enact persuasive measures which favor childbirth over abortion, *even if those measures do not further a health interest*." 505 U.S. at 886 (emphasis added). When read carefully, the Court in *WWH* struck down the Texas laws because the burdens imposed by the laws constituted *substantial* obstacles to a woman's right to obtain an abortion and the burdens heavily outweighed any medical benefits. The substantial

nature of the obstacles that the Court found to have been imposed by the Texas laws in *WWH* are consistent with the Court's post-*Casey* precedent.  *See Gonzales v. Carhart*, 550 U.S. 124, 156, 164, 166, 168 (2007) (partial-birth abortion ban not an undue burden); *Stenberg*, 530 U.S. at 945–46 (a law that could be read as prohibiting the most commonly used method of performing previability second trimester abortions imposed an undue burden); *Mazurek*, 520 U.S. at 974–75. This is far from the simplistic analysis Plaintiffs assert.

In this case, even assuming for the purposes of this motion to dismiss that the physician-only laws have little to no medical benefit,[6] and that these laws caused the obstacles Plaintiffs assert,[7] the asserted obstacles do not amount to a constitutionally injurious substantial obstacle to a woman's right to obtain an abortion as pled.

Plaintiffs allege that the physician-only laws prevent Planned Parenthood from offering medication and aspiration abortions on *evenings and weekends*, which can cause a *one week delay* for women seeking those types of abortions, potentially moving them from a medication to an aspiration abortion.  (*Id.* ¶¶ 79, 81, 87-91.)   Plaintiffs also assert that women seeking aspiration and medication abortions in Idaho face the substantial obstacles of lengthy travel time and the associated expenses of time off work, transportation and childcare.  (*Id.* ¶¶ 72–78.) But making abortions only available at the times almost all other medical procedures are routinely available, *i.e.* during the workweek, cannot possibly be a substantial obstacle. Plaintiffs make their case on the safety and minimal invasiveness of medication and aspiration abortions, so the possibility that a one week delay might mean a woman must have an aspiration abortion instead of a medication abortion cannot constitute a substantial obstacle.  (*See* Dkt. 1, at

---

[6] Defendants do not concede this point.
[7] Defendants do not concede this point and, as discussed below, Plaintiffs have even not adequately pled a causal link in this matter sufficient to meet notice pleading standards.

¶¶ 17-23.)  Finally, neither driving distance, nor the associated burdens of travel, constitute substantial obstacles based on the facts Plaintiffs have pled, without more.  *See WWH*, 136 S. Ct. at 2313; *Casey*, 505 U.S. at 886.  For purposes of this motion, even if the allegations in the Complaint are taken as true, Plaintiffs have failed to state a claim upon which relief can be granted because the obstacles they allege are not "substantial" on their face.

### 2. Plaintiffs have not pled sufficient facts that the physician-only laws caused the alleged obstacles at issue here.

If the Court rejects Defendants' arguments above, Plaintiffs' Complaint should still be dismissed because they have not sufficiently pled *how* the physician-only laws caused the obstacles they allege.  Plaintiffs argue that they only have to plead that the law "burdens access to care" in a "real world context" in order to survive a motion to dismiss.  (Dkt. 43 at 14.)  But Plaintiffs must do more.  They must plead facts sufficient to plausibly allege causation.

In order for a law to constitute an undue burden, Plaintiffs must prove that the law caused the burden complained of.  *See WWH*, 136 S. Ct. at 2313.  Plaintiffs don't allege any facts about how or why the physician-only laws are the reason that there are no publicly accessible clinics in Idaho offering evening or weekend appointments.  And they fail to cite any facts about how or why the physician-only laws cause Planned Parenthood's scheduling delays.  Plaintiffs have merely offered conclusory allegations and, in so doing, failed to plausibly plead causation.  *See A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 82 n.2 (1st Cir. 2013) ("the plausibility standard applies with undiminished force to allegations of causation"). And because the physician-only laws went into effect almost 20 years ago, it is even more implausible that the physician-only laws are the cause of Plaintiffs' current scheduling issues.[8]

---

[8] Plaintiffs misunderstand Defendants' argument when they assert that Defendants argue that a 20 year-old law is somehow immune from challenge. (Dkt. 43 at 26–27.)  Defendants merely

To be clear, Defendants have not argued that Planned Parenthood should mitigate its scheduling issues by "making different business decisions." (Dkt. 43 at 15.) The point here is that *the State* is not *constitutionally required* to fix Planned Parenthood's scheduling issues by allowing APCs to perform abortions so that they are more readily available in Idaho. Plaintiffs have failed to allege sufficient facts regarding causation. Defendants' motion to dismiss should be granted.

### F. Plaintiffs' equal protection claim should be dismissed.

Because the physician-only laws do not impinge on a woman's ultimate right to choose a pre-viability abortion, there is no need to resolve whether the law infringes a fundamental right for equal protection purposes. *Harris*, 448 U.S. at 312, 322. However, even if the Court reaches Plaintiffs' equal protection claim, it fails to state a claim upon which relief can be granted. The Equal Protection Clause of the Fourteenth Amendment "confers no substantive rights and creates no substantive liberties." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 59 (1973) (footnote omitted). "The function of the Equal Protection Clause, rather, is to simply measure the validity of classifications created by state laws." *Id*. States are afforded "wide scope of discretion in enacting laws which affect some groups of citizens differently than others." *McGowan v. Maryland*, 366 U.S. 420, 425 (1961). Equal protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

The physician-only laws do not involve fundamental rights. They permit physicians to

---

contend that, when Plaintiffs are asserting a causal link between a 20 year-old law and their current scheduling difficulties, they must plead something more than just the conclusory allegations they have offered.

perform abortions, but no one else.  There is no fundamental right to perform an abortion.  *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 547 (9th Cir. 2004).  Similarly, there is no suspect class at issue in this case, and thus the physician-only laws are subject to rational basis review.  "[R]ational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."  *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993) (citations omitted) (internal quotation marks omitted).  "[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity."  *Id.* at 319-20 (citations omitted).  "Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."  *Id.* at 320 (citations omitted).  "Further, a legislature that creates these categories need not actually articulate at any time the purpose or rationale supporting its classification."  *Id.* (citations omitted) (internal quotation marks omitted).  Instead, a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  *Id.* (citations omitted) (internal quotation marks omitted).  "A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification."  *Id.* (citations omitted).  "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data."  *Id.* (alteration in original) (citations omitted).

In this case, it is unclear where Plaintiffs are attempting to steer the Court with respect to their equal protection claim,[9] but no suspect class is at issue here.  Physicians and APCs are not a

---

[9] At one point, Plaintiffs appear to argue that the laws are gender-based classifications.  But the physician-only laws are gender-neutral on their face and abortion regulations do not discriminate based on gender.  Plaintiffs may be attempting to argue that the law constitutes an unlawful

suspect class, and neither are pregnant women who seek abortions. *Tucson Woman's Clinic*, 379 F.3d at 547; *and see e.g. Maher*, 432 U.S. at 470. Plaintiffs' equal protection claim also fails because APCs are not similarly situated with physicians, for the reasons previously argued. (Dkt. 33-1 at 26-27.) And because no suspect class is involved here, the physician-only laws are subject to rational basis review, which they pass. The physician-only laws are entitled to a presumption of validity. The laws are rationally related to the State's interest in ensuring that abortions are performed safely, and they further that interest by setting the standard applicable to individuals who perform this unique act. The law also creates the structural mechanism that expresses the State's profound respect for potential life. On its face, the law passes rational basis review and Plaintiffs' equal protection claim should be dismissed.

DATED: May 3, 2019.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

By: /s/ *Cynthia Yee Wallace*
    CYNTHIA YEE-WALLACE
    Deputy Attorney General

By /s/ *Megan A. Larrondo*
    MEGAN LARRONDO
    Deputy Attorney General

---

pregnancy-based distinction, but if so, their argument fails. Though Plaintiffs' goal is to convince the Court to nullify the point, they cannot get around the fact that the U.S. Supreme Court recognizes that abortion is not like any other medical procedure. *Harris*, 448 at 325; *Casey*, 505 U.S. at 952. Terminating a potential life is not similar to performing a colonoscopy. Thus, it cannot be said that restricting the performance of abortions to only physicians, without more, is in and of itself an unlawful pregnancy-based distinction.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on May 3, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Nicole Hancock
nicole.hancock@stoel.com

Hannah Brass Greer
hannah.brassgreer@ppgnhi.org

Vanessa Soriano Power
vanessa.power@stoel.com

S. Julia Collier
julia.collier@stoel.com

Alice Clapman
alice.clapman@ppfa.org

Kim C. Clark
kclark@legalvoice.org

Jill D. Bowman
jill.bowman@stoel.com

    /s/ *Cynthia Yee-Wallace*
CYNTHIA YEE-WALLACE
Deputy Attorney General