UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PLANNED PARENTHOOD OF THE GREAT NORTHWEST AND THE HAWAIIAN ISLANDS, a Washington corporation; MARY STARK, on behalf of herself and her patients,<br><br>      Plaintiffs,<br><br>      v.<br><br>LAWRENCE G. WASDEN, in his official capacity as Attorney General of Idaho; JAN M. BENNETTS, in her official capacity as Ada County Prosecuting Attorney; GRANT P. LOEBS, in his official capacity as Twin Falls County Prosecuting Attorney; THE INDIVIDUAL MEMBERS OF THE STATE BOARD OF MEDICINE, in their official capacity; THE INDIVIDUAL MEMBERS OF THE STATE BOARD OF NURSING, in their official capacity,<br><br>      Defendants. | Case No. 1:18-cv-00555<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court is Defendants' Motion to Dismiss (Dkt. 33). The motion is fully briefed and at issue. For the reasons set forth herein the Court will deny Defendants' Motion to Dismiss.

## BACKGROUND

**MEMORANDUM DECISION & ORDER - 1**

For almost twenty years, Idaho has made it unlawful for any person other than a physician to perform an abortion. Idaho Code § 18-608A (the "Physician-Only Law"). Plaintiffs Planned Parenthood of the Great Northwest and the Hawaiian Islands ("Planned Parenthood") and Mary Stark, a nurse practitioner licensed to practice advanced nursing in Idaho, Washington, and Oregon, on behalf of herself and her patients, now bring a civil rights lawsuit under 42 U.S.C. § 1983 claiming the Physician-Only Law is unconstitutional. *See* Dkt. 1. Plaintiffs allege that the law violates their patients' right to liberty and privacy as guaranteed by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, and violates the equal protection rights of patients and Advanced Practice Clinicians ("APCs") similar to Ms. Stark under the Fourteenth Amendment's Equal Protection Clause. *Id.* at 22.

Plaintiffs challenge the Physician-Only Law as applied to two early abortion procedures in particular—medication abortion and vacuum aspiration abortion. Medication abortion is typically performed using a regimen of prescription drugs. Dkt. 1 at 7-8. Those drugs work by first temporarily blocking the patient's pregnancy-related hormones and then causing the uterus to contract and expel its contents. *Id.* The patient typically passes the pregnancy at home in a process similar to a miscarriage. *Id.* In a vacuum aspiration abortion, the clinician inserts a small sterile tube through the cervix into the uterus. *Id.* A pump attached to the tube creates suction, which empties the uterine contents. *Id.* Throughout their complaint Plaintiffs allege these abortion procedures are nearly identical to other medical tasks APCs are licensed to perform in the state of Idaho. *See, e.g., id.* at 11, 12, 16.

Plaintiffs bring this lawsuit on behalf of three classes of APCs under Idaho law—nurse practitioners, physicians assistants, and nurse midwives. *See* Dkt. 1 at 2. Both the number of these providers and the breadth of their practice authority have grown significantly over the last two decades. *Id.* Idaho first recognized the role of "[a]dvanced practice professional nurse," the group of professionals Plaintiffs now describe as APCs, in the Nursing Practice Act in 1998. *See* Idaho Nursing Practice Act, 1998 Idaho Sess. Laws Ch. 118 (H.B. 662). As the profession has grown over the years, Idaho has increased the breadth of APCs' practice authority. *See* 2012 Idaho Sess. Laws Ch. 142 (S.B. 1273); Dkt. 1 at 10-11.

To receive a license to practice as an APC in Idaho a provider must be licensed as a registered nurse, have completed significant further education, and passed a qualifying exam. *See* Idaho Code § 54-1409(1). Once licensed, APCs' scope of practice is defined by Idaho's Board of Medicine. Dkt. 1 at 9. Nurse practitioners, for example, are authorized to "diagnos[e] and treat[]" and "prescribe[e], administer[] and dispens[e] of therapeutic pharmacologic and non-pharmacologic agents." Idaho Admin. Code r. 23.01.01.271.02. In Idaho, Nurse practitioners "assume primary responsibility for the care of their patients in diverse settings." *Id.* Similarly, nurse-midwives "provide[] the full range of primary health care services to women throughout the lifespan, including gynecologic care, family planning services, preconception care, prenatal and postpartum care, childbirth, care of the newborn and reproductive health care treatment." Idaho Admin. Code r. 23.01.01.280.03. Physician assistants perform a similar set of tasks, and are the only APCs required to do their work under the supervision of a physician. *See*

**MEMORANDUM DECISION & ORDER - 3**

Idaho Admin. Code r. 22.01.03.028.01. Plaintiffs bring claims on behalf of these providers because they fall under the American College of Obstetricians and Gynecologists' list of APCs who "can provide medication and aspiration abortions safely and effectively." *See* Dkt. 1 at 14 (citing Health & Medical Division, Board on Health Care Services, National Academies, *The Safety and Quality of Abortion Care in the United States*, at *14 (2018)).

Plaintiffs allege that both nurse practitioners and physician assistants in Idaho are currently licensed to perform a range of tasks very similar to the two abortion procedures at issue in this case. For example, both perform endometrial biopsies, a procedure where a tube is inserted through a patient's cervix into the uterus and a small piece of tissue is suctioned from the uterine lining. Dkt. 1 at 11. And, they perform colonoscopies, insert (and remove) intrauterine devices (IUDs) through patients' cervixes, and perform intrauterine insemination, a form of assisted reproductive technology that involves injecting sperm into a patient's uterus. *Id.* at 11-12. And, most significantly, all APCs are licensed to use vacuum aspiration to help treat a patient who is experiencing a miscarriage. *Id.* Plaintiffs allege this method is identical, procedurally, to performing an aspiration abortion. *Id.*

Plaintiffs' Complaint focuses on the specific abortion procedures they allege are safe and well within APCs' clinical purview otherwise allowed under Idaho law. They allege that singling out abortion from APCs' otherwise broad scope of practice inappropriately limits availability of abortion procedures for Idaho women. *Id.* at 19. In fact, Plaintiffs allege that abortion is the only health care service that the Idaho

**MEMORANDUM DECISION & ORDER - 4**

Legislature singles out as beyond an APC's scope of practice. Dkt. 1 at 12. The Complaint alleges that due to the Physician-Only Law a woman can obtain an abortion at Planned Parenthood in Idaho only: (1) on Thursday[s] in Meridian; (2) on two Wednesdays per month in Twin Falls; (3) on Friday[s] in Boise; and (4) via telemedicine approximately 1-2 half days per week. *Id.* at 19. Plaintiffs allege this diminished availability unduly burdens patients' right to liberty and privacy as guaranteed by the Due Process Clause of the Fourteenth Amendment, and violates the Equal Protection Clause of the Fourteenth Amendment by singling out abortion and abortion providers without adequate justification. *Id.* at 22.

Defendants moved to dismiss, arguing that binding Supreme Court precedent forecloses Plaintiffs' undue burden claims. Dkt. 33. Defendants also argue that Plaintiffs' complaint fails to state a claim for relief or meet the pleading requirements of Rule 8. *Id.* For the reasons that follow, the Court will deny Defendants' motion.

## LEGAL STANDARDS

1. *12(b)(6) Legal Standard*

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept legal conclusions that are couched as factual allegations as true; the trial court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id*. at 679. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

On a motion to dismiss, the Court may consider matters that are subject to judicial notice. *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1388 (9th Cir. 1987) (citation omitted). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866, n.1 (9th Cir. 2004) (citations omitted).

2.  *Undue Burden Legal Standard*

Before evaluating Plaintiffs' Complaint, the Court will highlight a few general principles that guides its analysis. First, it is beyond debate that the Supreme Court has consistently upheld a woman's right to choose to have an abortion before viability without undue interference from the state. *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 846 (1992); *Roe v. Wade*, 410 U.S. 113 (1973). The Court has balanced this

right with States' "legitimate interests from the outset of the pregnancy in protecting the health of the woman and the life of the fetus that may become a child." *Gonzales v. Carhart*, 550 U.S. 124, 145 (2007). States have a legitimate interest in crafting legislation that ensures abortions are safe and patients are well-informed. *Id*. at 160.

The Court most recently stated the analytical framework for undue burden claims in *Whole Woman's Health v. Hellerstedt*, 136 S.Ct. 2292(2016) ("*WWH*"). In *WWH*, the Court noted:

> We begin with the standard, as described in *Casey*. We recognize that the "State has a legitimate interest in seeing to it that abortion, like any other medical procedure, is performed under circumstances that insure maximum safety for the patient." But, we added, "a statute which, while furthering [a] valid state interest, has the effect of placing a substantial obstacle in the path of a woman's choice cannot be considered a permissible means of serving its legitimate ends." Moreover, "[u]nnecessary health regulations that have the purpose or effect of presenting a substantial obstacle to a woman seeking an abortion impose an undue burden on the right."

*Id.* at 2309 (quoting *Roe*, 410 U.S. at 150, and *Casey*, 505 U.S. at 877, 878). In *Casey*, backing away somewhat from preexisting abortion jurisprudence, the Court promoted balancing "the burdens a law imposes on abortion access together with the benefits those laws confer." *Id.* (citing *Casey*, 505 U.S. at 887-88). *WWH* cemented the *Casey* standard as a contextual, fact-based inquiry where a trial court must assess the impact of the alleged regulatory burden as specifically applied. *Id.* at 2310. The fact-intensive balancing inquiry required by *WWH* guides this Court's approach to the undue burden claims Plaintiffs assert here.

## ANALYSIS

Defendants move to dismiss Plaintiffs' complaint on two grounds. First, Defendants argue that this Court is bound by the Supreme Court's decision in *Mazurek v. Armstrong*, where the Court reversed the Ninth Circuit's finding that Montana's physician-only abortion law was unconstitutional. 520 U.S. 968, 975-76 (1997). Second, Defendants argue that Plaintiffs fail to state a claim for violations of the Due Process and Equal Protection clauses of the Fourteenth Amendment. For the reasons that follow, the Court will deny Defendants' motion.

1. **The Court Is Not Bound to Dismiss Plaintiffs' Complaint Because of** *Mazurek*

In *Casey,* the Supreme Court established the undue burden framework for claims challenging the constitutionality of state abortion regulations. Until recently, lower courts operated under *Casey*'s guidance that "the Constitution gives the States broad latitude to decide that particular functions may be performed only by licensed professionals, even if an objective assessment might suggest that those same tasks could be performed by others." 505 U.S. at 885. In *Casey* itself the Supreme Court upheld the provision of a Pennsylvania statute requiring that a doctor be the one to provide informed consent to the female patient, rather than a "qualified assistant." *Id.* at 884-85. The rule following *Casey*, therefore, appeared to be that States could constitutionally regulate whether abortion-related procedures could be performed by non-physicians.

The Supreme Court subsequently affirmed that principle in the physician-only law context. In *Mazurek*, the Court reversed the Ninth Circuit's finding that Montana's physician-only abortion statute was unconstitutional. 520 U.S. at 968. The Court in *Mazurek* overruled the lower court because the determination that a physician-only law

**MEMORANDUM DECISION & ORDER - 8**

created an undue burden was "clearly erroneous under [the Court's] precedents." *Id.* at 975. The Ninth Circuit echoed this holding in later cases. *See, e.g., McCormack v. Hiedeman*, 694 F.3d 1004, 1014 (9th Cir. 2012) ("[T]he question before the Supreme Court in *Mazurek* was whether a state could bar medical professionals other than physicians from providing abortion services.").

Although the Supreme Court has not overruled *Mazurek*, this Court is not bound to dismiss Plaintiffs' undue burden claims regarding Idaho's Physician-Only Law simply because the Supreme Court overruled the Ninth Circuit's finding that Montana's physician-only law was unconstitutional. Instead, the Court must look to the burdens the Idaho Physician-Only Law places on Idaho women seeking abortions in Idaho. Then, the Court must balance those burdens, if any, against the law's constitutionally-acceptable objectives of protecting the health of the mother and the life of the unborn. The Ninth Circuit has repeatedly pointed out that this inquiry is fact-specific. *See Planned Parenthood Ariz., Inc. v. Humble*, 753 F.3d 905, 914 (9th Cir. 2014) ("[T]he undue burden test is context-specific, and . . . both the severity of a burden and the strength of the state's justification can vary depending on the circumstances."); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 541 (9th Cir. 2004) ("Casey made clear that the 'substantial obstacle' standard for determining when a law poses an undue burden on the right to obtain an abortion is record-dependent."). That the Supreme Court upheld one state's physician-only statute on one set of facts does not close the courthouse door to Idaho plaintiffs alleging that Idaho's Physician-Only Law unduly burdens patients in Idaho.

**MEMORANDUM DECISION & ORDER - 9**

The facts of this case are significantly different from those the Supreme Court considered in *Mazurek* on both sides of the undue burden scale.

First, the burdens on women seeking an abortion in *Mazurek* were insignificant. The record in *Mazurek* indicated that there was only one non-physician qualified to perform abortions in Montana, and she was only licensed to practice with a physician present. *Mazurek*, 520 U.S. at 970-71. Any physician-only law in Montana only blocked women's access to that sole provider. *Id.* Thus, the burden on women seeking an abortion was minimal. In this case, however, Plaintiffs allege there are multiple APCs qualified to perform abortions *without* a physician being present. *See* Dkt. 1 at ¶¶ 11, 57-71. Plaintiffs allege Planned Parenthood alone has six APCs who could immediately begin providing abortion care if not for the Physician-Only Law. *Id.* at ¶ 71. Plaintiffs further allege that allowing these APCs to perform abortions would substantially lessen the burden on access to abortion care in Idaho, both in terms of travel time and expense, and wait time for an appointment. *Id.* at ¶¶ 94-96.

Second, the calculation of state interest in protecting the health of the mother has also changed substantially since *Mazurek*. For example, Plaintiffs allege that since 1997, the United States Food and Drug Administration has approved safe and legal medication abortion—specifically allowing it to be provided by APCs. *Id*. ¶¶ 59-71. In the same time frame, Idaho has also broadened APCs' scope of practice to include prescribing medication without physician supervision. *Id.* Because Plaintiffs allege that APCs play a much larger role in patient care now than in 1997, that advances in medication and aspiration abortion make these procedures much safer than in 1997, and that expanding

**MEMORANDUM DECISION & ORDER - 10**

the abortion-provider group to include APCs would make abortions in Idaho more available, the benefits and burdens at issue here are very different than those the Supreme Court considered in *Mazurek*.

The fact that Plaintiffs challenge a statute similar to the Montana law at issue in *Mazurek* does not, without consideration of the specific facts, warrant dismissal of Plaintiffs' Complaint. Using the benefits-and-burdens balancing approach the Supreme Court adopted in *WWH* and the Ninth Circuit's guidance that undue burden analysis is a context-specific exercise, the Court finds that *Mazurek* does not control, and does not require dismissal of Plaintiff's Complaint at the 12(b)(6) stage.

**2. Plaintiffs State A Claim Upon Which Relief May Be Granted**

Defendants also argue this Court should dismiss Plaintiffs' Complaint because it fails to state a claim upon which relief may be granted. For the reasons that follow, the Court will deny Defendants' motion.

    *a. Substantive Due Process*

Plaintiffs' first claim for relief alleges that Idaho's Physician-Only Law unduly burdens Plaintiffs' patients' right to have an abortion in violation of the Due Process Clause of the Fourteenth Amendment. In support, Plaintiffs have alleged that "because of the Physician-Only Law, the days on which a woman can obtain an abortion at Planned Parenthood in Idaho are very limited." Dkt. 1 at 19. Plaintiffs further allege their patients request abortion appointments on days they are unable to schedule, again, "because of the Physician-Only Law." *Id.* at 20. In short, Plaintiffs allege this law causes patients seeking

abortions to travel further and wait longer than they would have to if the law were not in place. *Id.* at 20-21.

Defendants move to dismiss Plaintiffs' substantive due process claim on the grounds that the scope of the constitutional freedom recognized in *Roe* does not entitle patients to "regularly scheduled abortions or the use of APCs." Dkt. 33-1 at 20. That is, Defendants suggest there is no "burden" on the right as *Roe* understood it. *Id.* Furthermore, Defendants suggest *Roe* "does not affirmatively require the State to allow APCs to perform abortions." *Id.* at 22. And to be sure, Defendants are correct that *Roe* and its progeny do not require States to certify certain professionals to perform abortions, or compel States to make abortion available anywhere, at any time, to anyone. *See Roe,* 410 U.S. 113*; Casey,* 505 U.S. 833.

But Defendants' argument does not correctly capture the Supreme Court's approach to the right to abortion, or the scrutiny this Court must apply to abortion-related state action. As the Court re-affirmed in *WWH*, "a provision of law is constitutionally invalid, if the 'purpose or effect' of the provision 'is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability.'" *Whole Woman's Health*, 136 S.Ct. at 2299 (quoting *Casey* 505 U.S. at 878). Here, Plaintiffs have alleged that the Physician-Only Law has the "effect" of limiting the number of days on which a woman can have an abortion in Idaho. Dkt. 1 at 19. If Plaintiffs allege that Idaho interferes with patients' ability to vindicate their constitutionally protected right to an abortion, as they do here, and Defendants do not provide the Court with sufficient

countervailing evidence of the benefits the State seeks to achieve with the law, the Court must deny Defendants' motion to dismiss.

Defendants also argue that Plaintiffs fail to causally connect the dots between the Physician-Only Law and its alleged effect of diminishing the availability of abortion providers in Idaho. Dkt. 33-1 at 23. Defendants begin by disputing the alleged limitations the Physician-Only Law places on abortion in Idaho. *Id.* at 5-6. And Defendants are correct that the fact Doctors are only available three days a week in Idaho to perform abortions is not because of the Physician-Only Law. *See id.* at 5. Defendants also point out that Idaho recently repealed a statute preventing physicians from performing medication abortions by telemedicine, which made abortion more readily available in the state. *Id.* This Court has taken judicial notice of facts underlying Planned Parenthood's 2015 lawsuit challenging that telemedicine ban, specifically their stipulation that "telehealth addresses physician shortage and allows flexibility in scheduling" for Planned Parenthood. *See* Req. for Jud. Not., Ex. C ¶ 61. Defendants' arguments add up to the conclusion that Idaho has made it easier for women to obtain an abortion in the last several years. That it is easer to obtain an abortion in Idaho in 2018 than it was in 2015 does not undermine the independent burden Plaintiffs allege is caused by the Physician-Only Law.

The Court finds that Plaintiffs have alleged a causal connection between the Idaho Physician-Only Law preventing APCs from performing abortions and a burden on women's ability to obtain abortions in Idaho. *See* Dkt. 1 at ¶¶ 71-93. For example, Planned Parenthood alleges that it has six APCs who could begin performing aspiration

**MEMORANDUM DECISION & ORDER - 13**

or medication abortions immediately if the Physician-Only Law did not prevent them from doing so. *Id.* at 71. Plaintiffs have also plausibly alleged that abortions would be available on more days, and at more times of day, if the ban on APCs performing abortions were lifted. *See id.* Because the Court accepts the allegations in Plaintiffs' Complaint as true at the motion to dismiss phase, and because Plaintiffs have plausibly alleged that Idaho's Physician-Only Law has the effect of placing an obstacle in women's path to seeking an abortion, Plaintiffs have sufficiently stated a claim for relief under due process clause of the Fourteenth Amendment. *See Twombly,* 550 U.S. at 572.

    *b. Equal Protection Claims*

Defendants also move to dismiss Plaintiffs' equal protection claims. Plaintiffs allege that Defendants violated the Fourteenth Amendment's Equal Protection Clause both by singling out abortion for stricter regulation among other comparable health care services and by treating APCs differently than physicians without justification. For the reasons that follow, the Court will deny Defendants' motion to dismiss on these grounds.

    *i. Equal Protection Claims of Patients*

First, Plaintiffs claim that the Physician-Only Law violates patients' equal protection rights under the Fourteenth Amendment by singling out abortion without adequate justification. Laws allegedly in violation of the Equal Protection Clause are generally subject to one of three levels of "scrutiny" by courts: strict scrutiny, intermediate scrutiny, or rational basis review. Laws are subject to strict scrutiny when they discriminate against a suspect class, such as a racial group, *see e.g., Grutter v. Bollinger*, 539 U.S. 306, 326 (2003), or when they discriminate based on any

**MEMORANDUM DECISION & ORDER - 14**

classification but impact a fundamental right, such as the right to vote. *See e.g., Reynolds v. Sims*, 377 U.S. 533, 562 (1964). As the Ninth Circuit has emphasized, "[t]he right to abortion is a fundamental constitutional right." *Tucson Woman's Clinic*, 379 F.3d at 544 (citing *Casey*). But the Ninth Circuit has also pointed out that *Casey* "replac[ed] the traditional scrutiny analysis with the undue burden test." *Id.* Therefore, instead of applying a level of scrutiny to Plaintiffs' equal protection claims on behalf of patients, the Court will assess the validity of those claims under *Casey*'s undue burden test.

As indicated above, Plaintiffs have stated a claim that patients' right to an abortion as understood in *Casey* is unduly burdened by Idaho's Physician-Only Law. *See infra*, § 2(a). Therefore, the Court will deny Defendants' motion to dismiss the equal protection claim on behalf of patients on these grounds.

### ii. Equal Protection Claims of APCs

Plaintiffs also allege that Idaho's Physician-Only Law violates the equal protection rights of APCs by treating them differently than doctors when it comes to abortion. A plaintiff may state a claim under § 1983 for a violation of the Equal Protection Clause in two ways. First, a plaintiff may show that a defendant acted with an intent or purpose to discriminate against the plaintiff based upon his membership in a protected class, such as race. *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998). Second, if the action in question does not involve a plaintiff's membership in a suspect class, a plaintiff may establish an equal protection claim under the "class of one" theory by showing he or she was intentionally treated differently from other similarly situated individuals without a

rational basis for the difference in treatment. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008).

Defendants first argue that Plaintiffs' equal protection claim on behalf of APCs should fail because doctors and APCs are not similarly situated. When determining if groups are similarly situated the "analysis must focus on factors of similarity and distinction pertinent to the state's policy, not factors outside the realm of its . . . concern." *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 967 (9th Cir. 2017). The "factors of similarity and distinction pertinent to" the Physician-Only Law are the providers' abilities to provide safe abortion care. *See* Dkt. 43 at 30. Defendants point out that Physicians have different educational requirements, licensing requirements, and scopes of practice. Dkt. 33-1 at 26. Although APCs and Physicians are undoubtedly different in many respects, Plaintiffs' Complaint alleges they are materially identical in their qualifications and ability to perform the two types of abortion at issue in this case. *See* Dkt. 1 at ¶¶ 30-71. Therefore, assuming the allegations in Plaintiffs' Complaint are true, the Court finds the two categories of professionals are "substantially similar" for purposes of Plaintiffs' equal protection claim on behalf of APCs.

If a statute treats similarly situated classes of persons differently but does not implicate a fundamental right or burden a suspect class, there still "must exist some rational connection between the state's objective for its legislative classification and the means by which it classifies its citizens." *Silveira v. Lockyer*, 312 F.3d 1052, 1088 (9th Cir. 2002); *see also Rothery v. County of Sacramento*, 700 F. App'x 782 (9th Cir. 2017). As Defendants point out in their motion to dismiss, laws subject to rational basis review,

like the Physician-Only Law here, are entitled to a "strong presumption of validity." Dkt. 33-1 at 27 (citing *Heller v. Doe by Doe*, 509 U.S. 312, 319-20 (1993)). The Court evaluates the statute under the rational basis test at the motion to dismiss phase, but there still "must exist some rational connection between the state's objective for its legislative classification and the means by which it classifies its citizens." *See Silveira v. Lockyer*, 312 F.3d 1052, 1088 (9th Cir. 2002).

At this stage of the litigation, assuming the allegations in Plaintiffs' Complaint are true, the Court will deny the motion to dismiss the equal protection claims brought on behalf of other unnamed Idaho APCs. In their motion to dismiss Defendants fail to provide any legitimate reason for restricting the provision of abortion care to physicians only, or for allowing APCs to provide other low-risk medical care but not abortion. *See* Dkt. 33-1 at 27. Instead, Defendants simply point out that "the U.S. Supreme Court has already recognized physician-only laws are constitutionally permissible to ensure the safety of the abortion procedure." *Id.* Because Defendants do not argue the Physician-Only Law serves any affirmative state purpose in their motion to dismiss, nor makes the "rational connection between the state's objective for its legislative classification and the means by which it classifies its citizens," the Court will deny Defendants' motion to dismiss Plaintiffs' equal protection claim on behalf of other unnamed Idaho APCs.

## ORDER

### IT IS HEREBY ORDERED:

1. Defendants' Motion to Dismiss (Dkt. 33) is DENIED.



DATED: July 24, 2019

_____
B. Lynn Winmill
U.S. District Court Judge