UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PLANNED PARENTHOOD OF THE GREAT NORTHWEST AND THE HAWAIIAN ISLANDS, a Washington corporation; MARY STARK, on behalf of herself and her patients,<br><br>      Plaintiffs,<br><br>      v.<br><br>LAWRENCE G. WASDEN, et al.,<br><br>      Defendants. | Case No. 1:18-cv-00555-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendants' Motion for Reconsideration and Motion for Summary Judgment (Dkt. 121).[1] The motion is fully briefed and at issue. For the reasons set forth herein the Court will deny Defendants' Motion for Reconsideration and Deny Defendants' Motion for Summary Judgment.

## BACKGROUND

Plaintiffs seek to enjoin the Physician-Only Law to the extent it prohibits

---

[1] Defendants also filed a Motion in Limine to Exclude Plaintiffs' Experts (Dkt. 125). The Court will rule on this motion by separate order.

**MEMORANDUM DECISION AND ORDER - 1**

any Advanced Practice Clinicians in Idaho from performing an abortion. Plaintiffs argue that the law is an undue burden on the rights of women to obtain abortions in violation of the Fourteenth Amendment's Due Process Clause and that it violates the Equal Protection Clause of the United States Constitution.

Plaintiffs challenge the Physician-Only Law as applied to two early abortion procedures—medication abortion and vacuum aspiration abortion. Medication abortion is performed using a regimen of prescription drugs. The patient typically passes the pregnancy at home in a process similar to a miscarriage. In a vacuum aspiration abortion, the clinician empties the uterine contents by inserting a small sterile tube through the cervix into the uterus. Plaintiffs assert that these abortion procedures are nearly identical to other medical tasks APCs are licensed to perform in the state of Idaho.

Plaintiffs bring this lawsuit on behalf of three classes of APCs under Idaho law—nurse practitioners, physicians assistants, and nurse midwives. Both the number of these providers and the breadth of their practice authority have grown significantly over the last two decades since the Physician-Only Law was passed. Plaintiffs bring claims on behalf of these providers because they fall under the American College of Obstetricians and Gynecologists' list of APCs who "can provide medication and aspiration abortions safely and effectively." *See* Dkt. 1 at

MEMORANDUM DECISION AND ORDER - 2

14 (citing Health & Medical Division, Board on Health Care Services, National Academies, *The Safety and Quality of Abortion Care in the United States*, at *14 (2018)).

Plaintiffs allege that APCs are currently authorized to perform vacuum aspiration and prescribe medication to help treat a patient who is experiencing a miscarriage. Therefore, it is argued, these abortion procedures are well within APCs clinical purview otherwise allowed under Idaho law. They allege that singling out abortion from APCs' otherwise broad scope of practice creates an undue burden on women seeking abortion in Idaho in violation of the Due Process Clause of the Fourteenth Amendment. Plaintiffs also allege that the law violates the Equal Protection Clause of the Fourteenth Amendment by singling out abortion and abortion providers without adequate justification.

On July 24, 2019, this Court denied Defendants' motion to dismiss after finding that long-standing case law in the U.S. Court of Appeals for the Ninth Circuit and the U.S. Supreme Court required the Court to balance any burdens the law places on women seeking abortions in Idaho against the law's constitutionally acceptable objectives of protecting the health of the mother and the life of the unborn. After this decision, the U.S. Supreme Court issued a plurality decision in *June Medical Services L.L.C. v. Russo*, 140 S. Ct. 2103 (2020).  The Defendants

**MEMORANDUM DECISION AND ORDER - 3**

ask the Court to reconsider its earlier ruling, arguing that *June Medical* has changed the undue burden standard the Court must apply in this case. In the alternative, Defendants move for summary judgment, arguing that under either applicable standard, there is no genuine dispute of material fact and they are entitled to summary judgment as a matter of law. For the reasons that follow, the Court will deny Defendants' motions.

## LEGAL STANDARD

### A.   Motion to Reconsider

A motion to reconsider an interlocutory ruling requires an analysis of two important principles: (1) error must be corrected; and (2) judicial efficiency demands forward progress. The former principle has led courts to hold that a denial of a motion to dismiss or for summary judgment may be reconsidered at any time before final judgment. *Preaseau v. Prudential Insurance Co.*, 591 F.2d 74, 79-80 (9th Cir. 1979).  While even an interlocutory decision becomes the "law of the case," it is not necessarily carved in stone. Justice Oliver Wendell Holmes concluded that the "law of the case" doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912). "The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced

that the law of the case is erroneous. There is no need to await reversal." *In re Airport Car Rental Antitrust Litig.*, 521 F. Supp. 568, 572 (N.D. Cal. 1981).

The need to be right, however, must co-exist with the need for forward progress. A court's opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). "Courts have distilled various grounds for reconsideration of prior rulings into three major grounds for justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or to prevent manifest injustice." *Louen v. Twedt*, No. CV-F-04-6556 OWW/SMS, 2007 WL 915226, at *4 (E.D. Cal. March 26, 2007). If the motion to reconsider does not fall within one of these three categories, it must be denied.

### B.   Motion for Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal

**MEMORANDUM DECISION AND ORDER - 5**

tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

## ANALYSIS

### A.   Motion to Reconsider

As an initial matter, Defendants ask this Court to reconsider its Order denying Defendants' motion to dismiss because the legal standard governing the undue burden analysis has changed. After this Court's decision, the U.S. Supreme Court issued a plurality decision in *June Medical Services L.L.C. v. Russo*, 140 S. Ct. 2103 (2020), in which the Court considered a facial challenge to a Louisiana statute it determined was "nearly identical" to the Texas statute at issue in *Whole Women's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016). *See June Medical*, 140 S. Ct. at 2139. Five Justices affirmed the district court's finding that Louisiana's admitting privileges law imposed an undue burden on a woman's right to choose an abortion and is therefore unconstitutional. *Id.* at 2120, 2139. However, the Justices disagreed on the appropriate test for analyzing whether the law posed an undue burden.

**MEMORANDUM DECISION AND ORDER - 7**

Citing *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992), and *Whole Women's Health*, the plurality applied the same balancing test this Court relied on in its decision on the motion to dismiss, weighing the benefits of the statute against the burdens to determine that Louisiana's admitting privileges requirement imposed an "undue burden." *June Medical*, 140 S. Ct. at 2120. In his concurrence, Chief Justice Roberts concurred in the judgment, but rejected the plurality's assertion that *Casey* mandated any sort of balancing test, or that such a test was conducted in either *Casey* or *Whole Women's Health*. *Id.* at 2138. The Chief Justice took the position that the correct standard, as set out in *Casey*, requires (1) that the law must be reasonably related to a legitimate purpose; and (2) that the law must not place "a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." *Id.*

Thus, the question raised by the Defendants' motion to reconsider is whether *June Medical* overturned the balancing test previously applied in this case. In resolving that question our starting point is *United States v. Marks*, 430 U.S. 188 (1977). There the Court held that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks*, 430 U.S. at 193.

**MEMORANDUM DECISION AND ORDER - 8**

However, this simple guidance has led to inconsistent application by the various circuit courts. Despite this circuit inconsistency, the Ninth Circuit has explicitly adopted a "reasoning-based approach" to applying the *Marks* rule. *United States v. Davis*, 825 F.3d 1014, 1021 (9th Cir. 2016). Thus, a "fractured Supreme Court decision should only bind the federal courts . . . when a majority of the Justices agree upon a single underlying rationale and one opinion can reasonably be described as a logical subset of the other." *Id.* If no single rationale is supported by a majority, then only the specific result is binding on lower federal courts. *Id.*

In *June Medical*, the plurality and the Chief Justice used different tests. While the plurality balanced the law's burden against its benefits, the Chief Justice considered only the burdens. *Compare* 140 S. Ct. at 2131, *with id.* at 2141-42. Neither of these tests can be considered a logical subset of the other.[2] Indeed, the Chief Justice explicitly rejected the reasoning applied by the plurality. *Id.* at 2136.

---

[2] The Ninth Circuit has explained that the balancing test presents a sliding scale for the court to consider. *See Planned Parenthood Ariz., Inc. v. Humble*, 753 F.3d 905, 912–13 (9th Cir. 2014). "The more substantial the burden, the stronger the state's justification for the law must be to satisfy the undue burden test; conversely, the stronger the state's justification, the greater the burden may be before it becomes 'undue.'" *Id.* Thus, while the two tests likely reach the same conclusion as to whether a statute creates a substantial obstacle, they will not always agree that the law creates an undue burden. Under the plurality's reasoning, a strong enough benefit could justify the burden. Thus, not all laws invalid under the Chief Justice's reasoning are invalid under the plurality's test. Similarly, laws that are invalid under the plurality opinion are not necessarily invalid under the Chief Justice's reasoning. Therefore, neither test is a logical subset of the other.

**MEMORANDUM DECISION AND ORDER - 9**

Thus, the narrowest grounds upon which the Justices who concurred in the judgment agree is that *Whole Women's Health* is entitled to stare decisis effect on essentially identical facts. *Id.* at 2120 (plurality); *id.* at 2139 (concurrence). Therefore, under *Marks* and *Davis*, the Chief Justice's substantial burden test is not the holding of *June Medical* based on an overlap in the reasoning between the concurrence and the plurality.

Next, the Court must determine if *June Medical* changed the applicable standard because of an overlap in reasoning between the concurrence and the dissents. Although the Ninth Circuit has not expressly ruled on the question of whether dissents may be considered under the *Marks* rule, *Marks* itself states that "the holding of the Court may be viewed as that position taken by those *Members who concurred in the judgments* on the narrowest grounds." 430 U.S. at 193 (emphasis added). A dissenting opinion does not fit this description.[3]

This approach is also consistent with the general approach to Supreme Court precedent. Lower courts cannot survey non-majority opinions to count votes and predict how the Supreme Court will rule; they must apply existing precedent to the

---

[3] *See Planned Parenthood of Indiana and Kentucky, Inc. v. Box*, 991 F.3d 740 (7th Cir. 2021) (collecting cases holding that dissenting opinions are not considered under *Marks* from the Seventh, Fourth, Tenth, Second, Third, Eleventh and D.C. Circuits).

cases before them. It is the Supreme Court's prerogative alone to overrule one of its precedents. *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997). Thus, *June Medical* did not change the undue burden test that applies here and Defendants' motion for reconsideration is denied.

### B.  Motion for Summary Judgment

Defendants argue that Plaintiffs cannot prevail on either their substantive due process or equal protection claims. For the reasons that follow, the Court will deny Defendants' motion for summary judgment.

#### 1.  Substantive Due Process

Plaintiffs allege that Idaho's Physician-Only Law unduly burdens Plaintiffs' patients' rights to have an abortion in violation of the Due Process Clause of the Fourteenth Amendment. Laws regulating pre-viability abortions are unconstitutional if they impose an "undue burden" on a woman's right to abortion. *Casey*, 505 U.S. at 876. "A finding of an undue burden is a shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." *Id.* at 877. This test seeks to balance states' legitimate interest in maternal health and protecting fetal life with a woman's fundamental right to abortion. *Humble*, 753 F.3d at 911-12.

When applying the undue burden test, the court must "compare the extent of the burden a law imposes on a woman's right to abortion with the strength of the state's justification for the law" to determine if the burden is "undue." *Id.* at 912-13. "The more substantial the burden, the stronger the state's justification for the law must be to satisfy the undue burden test; conversely, the stronger the state's justification, the greater the burden may be before it becomes "undue." *Id.* When a state seeks to further its interest in potential life, the means "must be calculated to inform the woman's free choice, not hinder it." *Casey*, 505 U.S. at 877. Similarly, "laws purporting to protect women's health . . . 'must be calculated' to advance women's health, 'not hinder it.'" *Id.*

### a. The State's Interests

The Court will first examine the strength of Idaho's justification for the law. The Defendants assert that the law serves two state interests: "(1) it provides a way to ensure the maximum safety of the abortion procedure; and (2) it creates a structural mechanism that expresses the State's profound respect for potential life." Dkt. 122 at 15.

Plaintiffs challenge Defendants' assertion that limiting abortion care to physicians reduces risk of complications and enhances care, arguing that there is no medical reason to prevent APCs from providing medication abortion or

performing aspiration abortion procedures. Studies have shown that trained APCs can provide abortions as safely and effectively as physicians. Moreover, despite the fact that miscarriage care can be more medically challenging than early abortion care, APCs in Idaho are already permitted to provide medically-identical care for miscarriage management.

Further, there is evidence that a provider's competence to provide an abortion is determined not by the license they hold, but by their experience and training. Abortion training is not routinely provided in medical degree programs or non-specialized residencies or preceptorships. To acquire the necessary skill and training, both physicians and APCs must seek out training opportunities beyond what is required for their respective licensure. Thus, a reasonable factfinder could conclude that the statute does nothing to advance patient safety.

Turning to the State's interest in potential life, the record before the Court does not establish how setting "minimum qualifications for the individual who can terminate potential life" is "calculated to inform [a] woman's free choice." *Casey*, 505 U.S. at 877. Unlike *Casey*, where the law was aimed at providing information about patients' decisions and alternatives, there is no evidence before the Court that the Physician-Only Law at issue here ensures women are more informed about abortion procedures. To be sure, any obstacle would logically serve the State's

interest in potential life because it will prevent some women from obtaining an abortion. But to recognize that as a valid justification for the Physician-Only Law would clearly run afoul *Casey*. Thus, a reasonable factfinder could conclude that the statute does little to permissibly advance the State's asserted interest in potential life.

### b. Burdens on Women in Idaho

Next, we consider the burdens imposed by the Physician-Only Law. The Ninth Circuit has identified a non-exhaustive list of factors relevant to determining whether a law imposes an undue burden. *See Humble*, 753 F.3d at 915. To resolve the Defendants' motion for summary judgment, it is necessary to address only two of those factors: (1) whether the law significantly increases the cost of abortion or the supply of abortion providers and clinics; and (2) whether the law delays or deters patients obtaining abortions, and that delay increases the health risk to the patient. *See id.*

Plaintiffs have provided evidence that there is a physician shortage in Idaho[4] and Planned Parenthood is currently unable to meet patient demand for abortion

---

[4] The Court has previously taken judicial notice of facts underlying Planned Parenthood's 2015 lawsuit challenging a telemedicine ban in Idaho, specifically the parties' stipulation that there is a physician shortage in Idaho. *See* Dkt. 54 at 13.

care in Idaho. The limited pool of physicians available and willing to provide abortions limits the number of days on which a woman can have an abortion, restricts the number of clinics Planned Parenthood is able to staff, and increases the distance women must travel to obtain an abortion. It is common for women seeking abortion care to experience wait times of up to three weeks at Planned Parenthood's clinics.

These barriers to obtaining an abortion not only make it more difficult for women to arrange transportation, childcare, and time off work. They also add delay and increase the financial burden on the patient. This is particularly problematic for victims of intimate partner violence and individuals living in poverty.

It is well established that delaying an abortion—even by a few weeks—leads to increased risk for maternal health. Delay in obtaining an abortion can mean the difference between obtaining a medication abortion and an aspiration abortion, resulting in increased cost as well as increased medical risk.

Planned Parenthood asserts that it has eight APCs directly impacted by the Physician-Only Law who could immediately begin providing medication abortions and two that could immediately begin performing aspiration abortions if they were legally permitted to do so. Planned Parenthood is also equipped to train additional practitioners. If the ban on APCs providing abortion care was lifted, Planned

Parenthood could offer abortion care on more days, and at more times of day. This would reduce wait times and diminish the additional barriers women face in scheduling appointments noted above. In addition, APCs are widely recognized as essential to reducing healthcare costs and improving access to medical care.

In sum, a reasonable factfinder could conclude that the Physician-Only Law increases wait times for existing abortion providers, limits the number of clinics and their capacity to treat patients, increases the cost of abortion for both patients and providers, and results in delays which can adversely impact a woman's health. These facts, viewed in the light most favorable to the Plaintiff, are sufficient to raise a genuine issue of material fact as to whether the Physician-Only Law imposes a burden that outweighs any benefit the law provides. *See Tucson Women's Clinic v. Eden*, 379 F.3d 531 (9th Cir. 2004). Accordingly, summary judgment is precluded on the substantive due process claims.

### 2. Equal Protection Claims

Defendants also seek summary judgment on Plaintiffs' equal protection claims. Plaintiffs allege that Defendants violated the Fourteenth Amendment's Equal Protection Clause both by singling out abortion for stricter regulation among other comparable health care services and by treating APCs differently than physicians without justification. For the reasons that follow, the Court will deny

**MEMORANDUM DECISION AND ORDER - 16**

Defendants' motion for summary judgment as to these claims.

### a. Equal Protection Claims of Patients

Plaintiffs claim that the Physician-Only Law violates patients' equal protection rights under the Fourteenth Amendment by singling out abortion for stricter regulation among other comparable health care services without adequate justification. When analyzing equal protection claims related to abortion rights, courts apply the undue burden test rather than a more traditional equal protection scrutiny analysis. *Tucson Women's Clinic*, 379 F.3d at 544 (citing *Casey*, 505 U.S. at 873-74). As explained above, Plaintiffs have established that there are disputed issues of fact as to whether the Physician-Only Law places an undue burden on women seeking an abortion in Idaho. Therefore, the Court will deny Defendants' motion for summary judgment as to the equal protection claim on behalf of patients.

### b. Equal Protection Claims of APCs

Plaintiff's claim that Defendants violated the Fourteenth Amendment's Equal Protection Clause by treating APCs differently than physicians without justification. The Equal Protection Clause gives rise to a cause of action even if a plaintiff does not belong to a particular class or group. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To prevail on a "class of one" theory, a plaintiff

must show that he or she was intentionally treated differently from other similarly situated individuals without a rational basis for the difference in treatment. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). When determining if groups are similarly situated, the "analysis must focus on factors of similarity and distinction pertinent to the state's policy, not factors outside the realm of its . . . concern." *Ariz. Dream Act. Coal. v. Brewer*, 855 F.3d 957, 967 (9th Cir. 2017).

The "factors of similarity and distinction pertinent to" the Physician-Only Law are the providers' abilities to provide safe abortion care. Although APCs and physicians are different in many respects, Plaintiffs assert that they are materially identical in their qualifications and ability to perform the two types of abortion at issue in this case. Plaintiffs have established that they are allowed to provide other low-risk medical care. This is supported by evidence that Idaho has authorized both APCs and physicians treating miscarriage management to perform the same aspiration procedure used for aspiration abortions and prescribe the same medications used for medication abortions. In addition, both groups must generally obtain the same additional training beyond licensure to become competent in abortion care. Plaintiffs have presented sufficient evidence that physicians and APCs are "substantially similar" for purposes of their equal protection claim on behalf of APCs at the summary judgment stage.

**MEMORANDUM DECISION AND ORDER - 18**

If a statute treats similarly situated classes of persons differently but does not implicate a fundamental right or burden a suspect class, there still "must exist a rational connection between the state's objective for its legislative classification and the means by which it classifies its citizens." *Silveira v. Lockyer*, 312 F.3d 1052, 1088 (9th Cir. 2002); *see also Rothery v. County of Sacramento*, 700 F. App'x 782 (9th Cir. 2017).

Here, Defendants have not met their burden of establishing a rational connection between the State's goal of advancing maternal health and establishing different classifications for APCs performing aspiration procedures or prescribing medication based on whether they are inducing an abortion or treating a miscarriage. Plaintiffs have established that providers do not require different training to provide abortion care as opposed to miscarriage management. Further, regardless of whether the provider is a physician or an APC, there is a lower risk to the patient during abortion than miscarriage management.

These facts, when viewed in the light most favorable to the Plaintiffs, establish that there is a dispute of fact regarding whether the classification at issue here is truly related to a legitimate goal, or whether the "relationship is so attenuated as to render the distinction arbitrary or irrational." *Tucson Woman's*

**MEMORANDUM DECISION AND ORDER - 19**

*Clinic v. Eden*, 379 F.3d 531, 446-50 (9th Cir. 2004). Summary judgment on the equal protection claims of the APCs is therefore precluded.

## ORDER

**IT IS ORDERED that:**

1. Defendants' Motion for Reconsideration and Motion for Summary Judgment (Dkt. 121) is **DENIED**.

DATED: September 30, 2021

B. Lynn Winmill
U.S. District Court Judge

*Clinic v. Eden*, 379 F.3d 531, 446-50 (9th Cir. 2004). Summary judgment on the equal protection claims of the APCs is therefore precluded.

## ORDER

**IT IS ORDERED that:**

1. Defendants' Motion for Reconsideration and Motion for Summary Judgment (Dkt. 121) is **DENIED**.

DATED: September 30, 2021

B. Lynn Winmill
U.S. District Court Judge